**STATE of Missouri, Respondent,**

v.

**Frank ODOM, Appellant.**

No. 48929.

Supreme Court of Missouri,
Division No. 1.

Feb. 12, 1962.

J. K. Owens, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Edward A. Glenn, Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant was charged with the unlawful sale of narcotics, i. e., "one capsule containing approximately one grain of heroin, a derivative of opium." See Section 195.-020, RSMo 1959, V.A.M.S., and Section 195.200, Laws of Missouri 1959, S.B. No. 240. The amended information also charged prior felony convictions. The trial court heard evidence outside the presence of the jury and found that defendant had been priorly convicted of the said felonies as charged. The trial resulted in a verdict of guilty and the court fixed the punishment of the defendant at imprisonment in the penitentiary for a term of 15 years. Section 556.280(1), RSMo 1959, V.A.M.S. Defendant has duly appealed from the ensuing judgment and sentence.

The main witness for the State was Melvin Hogan. He admittedly was once a user of narcotics and was convicted for the use thereof in the federal court in 1949 and sentenced to two years' imprisonment. Captain Flavin of the Kansas City Police Department aided in getting Hogan a parole after he had served nine months and since that time Hogan has helped the police department from time to time in apprehending persons selling narcotics. Hogan testified that he was acquainted with the defendant; that he saw him on Twelfth Street on November 11, 1960, at which time defendant asked if he wanted to buy some heroin; that he told defendant he did but would have to go to the pawn shop to get some money; that he then went to a nearby drugstore and called Captain Flavin who sent Sergeant Hitchcock to meet him; that Sergeant Hitchcock searched him and then gave him a five dollar bill; that he gave a receipt therefor which had on it the serial number of the bill; that he then went into a building on Twelfth Street where he met the defendant and they went into a lavatory together where defendant pulled out "a little green gum package" and emptied the contents, three or four red capsules, into his hand; that he kept one of the capsules and put the others back in the gum wrapper and defendant put them in his pocket; that he gave defendant the five dollar bill he had obtained from Sergeant Hitchcock and then left the building; that he met Sergeant Hitchcock on Twelfth Street and gave him the capsule, and then went to police headquarters.

Sergeant Hitchcock testified concerning the fact that he met Melvin Hogan and gave him the five dollar bill and received the red capsule from him. He further testified that he then parked his car near the building that Hogan had recently come out of, and within a few minutes the defendant came out of that building and started to walk east on Twelfth Street; that he, Hitchcock, immediately approached the defendant and said, "Frank, you are under arrest"; that defendant was carrying a light topcoat and "threw this coat up to shield his face, and immediately threw something in his mouth"; that defendant resisted arrest and appeared to be trying to swallow something and continued to chew rapidly; that at that time patrolman Jenkins came to his assistance and they were able to handcuff the defendant; that he reached into defendant's pocket and pulled out a roll of bills and then took defendant to Captain Flavin's office at police headquarters; that an examination of the receipt and a five dollar bill taken from defendant indicated, from the serial number, that the bill was the one previously given to Hogan; that Captain Flavin asked defendant, "What in the world are you trying to do now? He says, 'Well, Mr. Flavin, I'm selling. I'm selling this to support my own habit.'" The witness then informed the captain that defendant had gulped something at the time of his arrest and Captain Flavin told him to take defendant to the hospital immediately and have his stomach pumped because if he had swallowed too much dope it might kill him.

710

James Furlong testified that he was a chemist for the Kansas City Police Department and that Sergeant Hitchcock, on November 12, 1960, had delivered to him an envelope containing a red capsule with the request that he analyze and determine the identity of the white powder therein; that the envelope had the following information thereon: "Frank Odom, 1512 Olive; 1 cap. of heroin, purchased 11–11–60 by Melvin Hogan, $5.00; money recovered." He stated that he analyzed the white powder and found that it was heroin, a derivative of opium.

The State then closed its case in chief and the only evidence offered by defendant was his own testimony. Defendant denied the charge and stated that Hogan had given him the $5 as a payment upon a loan of $10 he had made to him about two years before. He stated that in 1958 Hogan had become angry during an argument over a girl and had threatened him. Defendant also testified that he had been taken to the hospital and strapped to a table where hospital employees, under the supervision of Sergeant Hitchcock, had pumped his stomach and had given him some medicine. He then testified as follows: "Q. What did that cause you to do? A. Well, it caused me to—about a half hour later, to start vomiting.

"Q. The contents of your stomach after they forced this medicine down you, they kept that contents and checked it, didn't they? A. Yes, they did.

"Q. And the same when they pumped your stomach, didn't they? A. That is right."

In rebuttal the State offered the testimony of Dr. Boydston who related that they had attempted to pump defendant's stomach but were not completely successful so they gave him a "shot" which would cause vomiting; defendant did vomit and they placed the stomach contents in a small jar. The State thereafter offered witnesses who accounted for possession of the jar containing the contents of defendant's stom-

ach obtained on that occasion and showed that this jar was delivered to Mr. Furlong, the police department chemist. Mr. Furlong testified that he had run an analysis on the contents of the jar and found therein traces of heroin, and that it also contained a reddish gelatine-like substance which could have been the remainder of a capsule that dissolved in the stomach.

Defendant has not filed a brief in this court so we will consider the assignments in his motion for new trial.

Assignments 1 and 2 question the sufficiency of the evidence to support the verdict. These assignments are without merit. A review of the statement of facts herein clearly shows that there was ample evidence to support the submission of this case to the jury. See State v. McIntosh, Mo.Sup., 333 S.W.2d 51.

The fourth assignment asserts that the State failed to prove the charge "beyond a reasonable doubt." It is not our province to determine that question. That is an issue for the jury under proper instructions. We are of the opinion, as heretofore indicated, that there was substantial evidence sufficient to support a finding beyond a reasonable doubt that defendant was guilty of the offense charged. This assignment is therefore ruled adversely to defendant.

The remaining assignment reads as follows: "The court erred in allowing, over the objection of the defendant, evidence by the State as to alleged narcotics found in the stomach of the defendant, forcibly taken from him by pumping his stomach, which constitutes an unlawful search and seizure." In considering this contention it should be borne in mind that the evidence in question was not offered during the presentation of the State's case in chief. The only reference to the matter at that time was the testimony of Sergeant Hitchcock that Captain Flavin had told him to have defendant's stomach pumped because "if he had swallowed too much dope, it might kill

him." There was no showing then that the pumping had actually been done or that the contents had been retained and tested. These facts were all brought out by the defendant in his testimony on direct examination. Thereafter, in rebuttal, the State offered evidence as to the analysis of the stomach contents.

The Supreme Court of the United States in the case of Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, held that evidence of narcotics obtained from a defendant's stomach by "pumping" or by medically induced vomiting should not have been admitted under the factual situation there presented. The decision was based upon the proposition that such methods offend a sense of justice and evidence thus obtained is inadmissible under the due process clause of the Fourteenth Amendment of the United States Constitution.

In State v. Newcomb, 220 Mo. 54, 119 S.W. 405, this court held that the trial court erred in permitting a physician to testify as to the results of a physical examination of defendant which was made upon the order of a justice of the peace pending the preliminary hearing of the defendant. It was said in the opinion that said examination was a violation of the constitutional right of defendant not to be compelled to testify against himself.

■ Although we need not and do not rule the question, it would appear from the cases heretofore discussed that had the evidence complained of been offered as a part of the State's case in chief, and appropriate and timely objection made thereto, the trial court would have erred if it had admitted same. However, in the situation here presented we have concluded that the trial court did not err in the admission of said evidence.

■ "It is a well settled rule * * * that, where either party introduces part of an act, occurrence, or transaction, * * * the opposing party is entitled to introduce or to inquire into other parts of the whole thereof, in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary, or prove his version with reference thereto. * * * This rule has been held to apply * * * even though the evidence was in the first place illegal * * *." 22A C.J.S. Criminal Law § 660(c), pp. 655, 657, 658.

In this case the defendant voluntarily testified to the facts concerning the manner in which the contents of his stomach were obtained and stated that "they kept that contents and checked it." There was nothing in the State's case in chief which reasonably required that defendant relate that testimony in connection with his defense. But having opened the door to that transaction it is but common fairness that the State be permitted to show the results obtained when it "checked" the stomach contents. After defendant had testified that the "contents" were "kept" and "checked," if the State had not been permitted to show the results of its analysis, the jury could reasonably have concluded that no trace of heroin was found in said contents. This would have permitted the defendant to obtain an unfair advantage by offering a portion of the facts relating to illegally obtained evidence and then using constitutional guarantees as a shield against the admission of the remainder of the transaction. The following cases tend to support our conclusion: State v. Cochran, 356 Mo. 778, 203 S.W.2d 707 [15]; Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503; State v. Colvin, 226 Mo. 446, 126 S.W. 448 [16]; and State v. Lynn, Mo. App., 184 S.W.2d 760 [7].

■ We will briefly mention another ground supporting our view that the trial court did not err in overruling defendant's objection to the evidence in question. Just prior to the offer of testimony concerning the result of the analysis of the stomach contents, defendant's attorney stated that said evidence was obtained as "the result of an unlawful search and seizure of the

defendant and therefore we object." Since the ground of objection was "unlawful search and seizure" we are of the opinion that defendant, as a condition to a valid objection on that ground, was required to have theretofore filed a motion to suppress said evidence.

Supreme Court Rule 33.03, V.A.M.R., provides in part, as follows: "(a) A person aggrieved by an unlawful search and seizure made by a peace officer and against whom there is pending any criminal proceeding growing out of the subject matter of said search and seizure, may file in the court in which such proceeding is pending, a motion to suppress * * * any evidence gained by the peace officers by means of such search. Such motion may be based upon any one or more of the following grounds: * * * 5. That in any other manner the search and seizure violated the rights of the movant under Section 15 of Article 1 of the Constitution of Missouri or Amendment 14 of the Constitution of the United States. * * * The motion to suppress evidence shall be filed before the commencement of the trial or hearing unless opportunity therefor did not exist or unless the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain such a motion during the trial or hearing." We have consistently held that "when evidence is offered at the trial and objection that it was obtained by illegal means is then made for the first time, the court will determine only whether the evidence is relevant and competent. It will not pause to determine the collateral question as to how the evidence was obtained." State v. Tull, 333 Mo. 152, 62 S.W.2d 389, 392. Defendant did not file any motion to suppress prior to the trial or seek to file such a motion during the trial. Under those circumstances he is in no position to now claim that the evidence was obtained by "unlawful search and seizure."

An examination of the record as required by S.C. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.