**STATE of Missouri, Respondent,**

v.

**Frank L. HALL, Appellant.**

**No. 26767.**

Missouri Court of Appeals,
Kansas City District.

April 1, 1974.

---

Robert G. Duncan, William E. Shull, Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

Defendant was convicted of first degree robbery. The jury was unable to agree upon the sentence and the trial court sentenced him to thirty-five years in the care of the Department of Corrections. From this conviction and sentence he appeals and urges five points upon which he seeks our mandate of reversal. Two of these require that this case be reversed and remanded for another trial and both involve defendant's constitutional rights. *First,* he asserts that the court erred in denying his pre-trial motion to suppress certain evidence obtained in a warrantless search and seizure conducted in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 15, of the Missouri Constitution V.A.M.S. *Second,* he asserts that the court improperly admitted the testimony of an arresting officer concerning hearsay statements alleged to have been made by one Redcloud, who was arrested with the defendant and who was not proffered by the state as a witness, and this denied the defendant his constitutional rights of confrontation and cross-examination under the Sixth and Fourteenth Amendments of the United States Constitution.

In ruling upon the Fourth Amendment considerations with reference to search and seizure, we must view the "totality of the circumstances", State v. McGee, 473 S.W. 2d 686 (Mo.1971), and the "concrete factual context", Sibron v. State of New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 20 L. Ed.2d 917 (1968); Kansas City v. Butters, 507 S.W.2d 49 (Mo.App.1974), as disclosed from the record before us. In so doing, this court must carefully balance the basic constitutional rights of the defendant against the necessary functions of law enforcement officers in pursuit of their obligation to protect the public and to enforce the law. This is a balance not easy of attainment. This becomes obvious from a review of the myriad decisions dealing with the subject. However, running as a golden thread throughout the dominant and better reasoned of these decisions is the fundamental premise that when the admissibility of evidence is questioned because of the facts and circumstances surrounding its procurement by search and seizure, any court is firmly committed to meticulously examine the constitutional implications incident thereto.

This court has recently exhaustively reviewed the constitutional limitations on searches and seizures in the cases of State v. Funk, 490 S.W.2d 354 (Mo.App.1973) and City of Kansas City v. Butters, 507 S.W.2d 49 (decided March 4, 1974). We adopt as applicable here the guidelines contained in our *Butters* decision:

"A properly issued search warrant does not stand alone as the only means by which the Fourth Amendment requirement of reasonableness can be met. The Fourth Amendment's absolute admonition against unreasonable searches is not violated, (1) by a search incident to

a lawful arrest, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed. 2d 427 (1973), (2) by protective searches by officers for weapons upon less than probable cause to arrest, Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 (1968)[1], (3) by seizure of items falling within the 'plain view' doctrine, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), nor (4) by the search of a motor vehicle where 'probable cause' exists to believe that it contains a substance which offends against the law, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)".

The "totality of the circumstances" and the "concrete factual context" of the matter before us may be thus summarized:

On January 6, 1972 at 4:00 a. m., a lone man robbed Denny's Restaurant in North Kansas City, Missouri at gunpoint. He was described as wearing a gray parka with the hood over his head, a knit cap and wrap-around sunglasses. He used a pistol or revolver to threaten the employees and customers and, after looting the cash register, he fled the restaurant on foot.

At about 10:00 a. m. on January 6, 1972, two plain clothes detectives, Pasley and Thomas, of the St. Joseph, Missouri police department, were dispatched to the Howard Johnson Restaurant in that city to "check out two hippie characters" who were attempting to exchange a number of $1.00 bills for currency of larger denominations. They were given a description of a 1960 Chevrolet automobile bearing a Wyandotte County, Kansas license as the car being used by the "hippies".

The officers arrived at the Howard Johnson restaurant at about 10:10 a. m.

and saw defendant Hall and Redcloud coming out of the door into the parking lot. While the officers testified that the men did not look like "hippies", they stopped the defendant and Redcloud and asked them about the Chevrolet which was parked in the lot. Hall stated it was his car and the officers identified themselves and requested Hall and Redcloud to get into the rear seat of the patrol car for questioning.

In the car Hall showed Officer Pasley his driver's license and his registration for the Chevrolet. Hall stated that he had over $300.00 in cash, and showed Pasley several payroll stubs from his job. Actually, the defendant had $313.00 in cash on his person, of which $71.00 was in $1.00 bills. He told Pasley he saved $1.00 bills. There is conflict here as to the display of a parole card in Hall's wallet. Hall states that Pasley grabbed his wallet out of his hand and over defendant's protest began going through it, while Pasley testified that Hall voluntarily showed him the card. In either event, Hall was carrying a card showing that he was on parole from the Nevada Penitentiary, Carson City, Nevada, where he had served seven years for second degree murder. He told Pasley that he had written permission from his parole officer in Kansas, McElroy, to visit an aunt and uncle in St. Joseph, Missouri and showed Pasley this permission. Redcloud was unable to exhibit any identification to the officers.

Via the police radio the officers requested a computer check on Hall and Redcloud, with negative results. There was no pickup order, warrant, hold order, or any other police request for either of them. At this time, neither Pasley nor Thomas, nor the St. Joseph police department, had any report on the robbery at Denny's Restaurant which had occurred about six hours earlier. While still in the police car, apparently the officers requested, again via ra-

1. See also: Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) wherein the Supreme Court again approved the principles of Terry v. Ohio, by a 6 to 3 decision. This footnote does not appear in the quote.

dio that a check be made with Hall's parole officer in Kansas.

Pasley, who was sitting on the passenger side of the front seat, noticed a "bulge" in Redcloud's jacket pocket. He "patted" down the pocket, felt a weapon, reached in and pulled out an unloaded .22 caliber Smith and Wesson pistol. The questioning in the car up to this point had taken about 15 minutes. Hall and Redcloud were then directed to get out of the car and both were then searched. No weapon of any kind was found on Hall, but the money was found and retained by the officers. He was "clean". No other weapon was found on Redcloud.

Pasley testified at the hearing on the motion to suppress that, "At this point *they* were placed under arrest *for investigation of carrying a concealed weapon.*" Pasley testified that Redcloud was then handcuffed and placed back in the police car. Hall testified both he and Redcloud were handcuffed and placed back in the police car.

However, a discussion then occurred with reference to transportation to the police station and the officers decided to take Redcloud there in the police car with Thomas driving, and that Hall would drive his car with Pasley as a passenger. Pasley testified they made this decision "rather than leave that car (the Chevrolet) sitting there unprotected, it was better for Hall to drive his car to the station while I accompanied him." He admitted that it was daylight and the car could have been locked, but that was not done.

Since Hall could not drive in handcuffs, they were removed and Hall got behind the wheel of the Chevrolet. Pasley got in the front passenger seat. Pasley stated—"He (Hall) got in the car and sat down, and since I couldn't handcuff him and he had to drive the automobile I 'hit' the glove box * * *" and "I 'hit' the glove box for my own safety."

The glove box was closed but not locked and Pasley opened or "hit" it and found a .38 caliber revolver, a stocking cap and a pair of sunglasses.

All of the foregoing events occurred without any warrant, with no information about the commission of any robbery, without the receipt of any pick-up or hold request, no look out descriptions, and Hall was never asked nor did he give any consent that either he or his automobile could be searched.

En route to the police station, Pasley read the "Miranda" warning to Hall. At the station both Hall and Redcloud were booked for "investigation of carrying a concealed weapon and also for investigation of armed robbery." There was still no specific basis for such charges as to defendant except the fruits of the searches and seizures above-described, which Pasley said "are things normally used in an armed robbery."

Upon arrival at the police station, Pasley noticed a gray parka jacket on the back seat of the Chevrolet.

Hall was placed in a cell and Redcloud was taken to another place for interrogation, during the course of which he gave an implicating statement or confession, in which he stated that the .38 caliber pistol was his (acquired by theft) and that Hall had used the weapon to rob Denny's while he, Redcloud, acted as look out. Hall was then interrogated but refused to make any statement, requested counsel and asked and was granted permission to call his aunt and uncle in St. Joseph.

As a result of the statement of Redcloud, the St. Joseph police contacted the North Kansas City police and at about 4:45 p.m. two members of the latter department, armed with warrants, picked up Hall and Redcloud and the fruits of the search and seizure. The prosecution of Hall followed in Clay County, Missouri. He was the sole defendant and was not jointly charged nor tried with Redcloud.

Due to the trial court's ruling on defendant's motion to suppress such evidence, the state, over defendant's objections, was permitted to introduce in evidence the .38 caliber pistol, stocking cap and sunglasses (found in the glove box of the Chevrolet by Pasley); the parka (found on the back seat); and some $313.00 in cash (taken from defendant during the "frisk" outside the police car).

Since Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Adams v. Williams, Footnote 1, supra, certain definite standards have been defined governing the so-called protective "stop and frisk" situations. These standards may be summarized to be that where a police officer "observes unusual conduct which leads him reasonably to conclude, in the light of his experience, that criminal activity may be afoot and that the persons with whom he is dealing may be armed", he may conduct a "strictly circumscribed" and "carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him" before or even in the absence of probable cause to arrest. The search of the glove compartment of defendant's automobile does not fall within this exception to the proscription of the Fourth Amendment.

Neither does the search of the glove compartment of defendant's car fall within the so-called "plain view" rule, as declared in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The glove compartment was closed and Detective Pasley could not "view" its contents until he opened it.

Pasley testified that he made this search for his own safety. However, no "stop and frisk" situation then confronted the officers. The defendant had been stopped, interrogated and patted down some minutes before, outside of the automobile, after the unloaded .22 pistol had been found on Redcloud, and it had been determined that defendant was unarmed. Pasley knew Hall was unarmed and that he, Pasley, was in no danger of an assault by a weapon concealed upon the defendant's person.

To have justified a search of defendant's car or any part thereof so as to avoid the constitutional prohibition of the Fourth Amendment, such search must have been incident to, *following* and not *preceding* a *lawful* arrest, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), or it must be shown that there was probable cause to believe that the car contained a substance which offended against the law. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Harris v. United States, supra; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Edmonds, 462 S.W.2d 782 (Mo.1971).

Many Missouri authorities have approved such searches of automobiles after and incident to a lawful arrest, even though such search disclosed evidence of the commission of an act or crime of far greater seriousness than that impelling the original arrest. State v. Eaton, 504 S.W.2d 12 (Mo.1974); State v. Camper, 353 S.W.2d 676 (Mo.1962); State v. McCarty, 460 S.W.2d 630 (Mo.1970); State v. McCarthy, 452 S.W.2d 211 (Mo.1970); State v. Edmonds, supra. But a violative search cannot become a lawful one predicated upon the fact that the search proved successful. State v. Wing, 455 S.W.2d 457 (Mo.1970); State v. Young, 425 S.W.2d 177 (Mo.1968). "Resolution of [the] controlling applicability of the Fourth Amendment is apart from resolution of the accused's innocence or guilt." City of Kansas City v. Butters, supra.

Detective Pasley's declared purpose in his search of the glove compartment in defendant's car was for his "own safety" is not convincing. If he really feared bodily harm from the unarmed defendant by reason of the contents of his car, the defendant, handcuffed, could have been taken with

Redcloud to the police station in the police car or the defendant's car locked, and a warrant obtained for its search where it was. Or, it could have been locked, towed to the police station, a warrant obtained, and there searched. State v. McCarty, supra.

■ Be that as it may, the defendant was never *lawfully* placed under arrest prior to the search. After discovering the firearm on Redcloud, Pasley stated to *both* the defendant and Redcloud that *they both* were under arrest "for investigation of carrying a concealed weapon." This was not a valid or legal arrest, a condition precedent to the type of warrantless search here involved. Am.Jur., Searches and Seizures (1st Ed. Sec. 19); Harris v. United States, supra; United States v. Robinson, supra; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); State v. Johnson, 447 S.W.2d 285 (Mo. 1969); State v. Hamblin, 448 S.W.2d 603 (Mo.1970).

The statute covering this offense is Section 564.610 RSMo 1969, V.A.M.S., which reads in part:

"If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, * * * he shall, upon conviction, be punished * * *"

■ The necessary elements of this offense are: 1. Intention to carry a weapon concealed; 2. Concealment on the person or in such close proximity to the accused so as to be under his easy and convenient control. State v. Jordan, 495 S.W.2d 717 (Mo.App.1973); State v. Tate, 416 S.W.2d 103 (Mo.1967); State v. Haynes, 489 S.W.2d 233 (Mo.App.1972).

There is no dispute that at the time of the initial arrest an unloaded .22 pistol was found concealed in Redcloud's jacket. Even though unloaded, such fact placed Redcloud in violation of Section 564.610, supra. State v. Dorsey, 491 S.W.2d 301 (Mo.1973). Likewise, there is no dispute

that the defendant was not carrying any concealed weapon of any kind within the contemplation of the statute and the above decisions. He could only be arrested for this offense *vicariously* because his companion was found with such a weapon. This statute does not contemplate such a charge. In State v. Simon, 57 S.W.2d 1062 (Mo.1933), the court said (a declaration which we adopt as applicable here), at 1. c. 1063–1064:

"But mere knowledge on the part of appellant that Bettros (his companion) was committing the crime of carrying concealed a deadly weapon (a question of fact which we are not deciding) and even appellant's presence at the time, without any evidence of any act of participation by appellant in the wrongdoing of Bettros, does not tend to establish in any degree appellant's guilt of the charge against him."

We hold that there was no *lawful* arrest of defendant preceding the search of his automobile and that such search was, therefore, within the proscription of the Fourth Amendment of the United States Constitution and Article I, Section 15, of the Missouri Constitution.

■ Two other matters must be considered on this phase of the case. The parka discovered on the back seat of the car was within the "plain view" doctrine. Harris v. United States, supra.

■ The currency taken from defendant's person during the "frisk" that followed the discovery of the gun in the possession of Redcloud in the amount of $313.00 could not reasonably then be characterized as the "fruits" of a crime and was unlawfully seized.

As has been heretofore mentioned, the only information then in the possession of the officers was that two "hippie types" were trying to exchange some $1.00 bills for larger denominations (to our knowledge not an offense against the law), they were using a 1960 Chevrolet with a Kansas

license plate and they had discovered a gun on Redcloud. There is no evidence that the defendant acted in any belligerent, furtive or unusual manner during the interrogation or search. The officers had evidence that the defendant was licensed to drive, was the registered owner of the automobile, could account for the money by payroll stubs, was on parole from Nevada, had written permission from his parole officer to be in St. Joseph, and that there was no police information that he was wanted for anything. We conclude that the currency was unlawfully seized.

Therefore, the trial court erred in overruling defendant's motion to suppress the revolver, knit cap and sunglasses found in the glove compartment and the currency found on the person of the defendant, and such were improperly admitted in evidence.

While presenting a much closer question, we hold that the motion as to the parka was properly overruled and that it is not constitutionally inadmissible in evidence, if shown to be relevant and otherwise admissible.

The second point raised by the appellant which requires the reversal and remand of this case involves a trial incident.

The defendant was charged and tried alone. The record does not disclose what charges were lodged against Redcloud or what disposition was made of them and Redcloud was not called as a witness.

The point made by defendant stems from the following: Officer Pasley on cross-examination by defendant's counsel was questioned about the .38 caliber gun found in the glove compartment (and previously received in evidence as an exhibit) :

"Q  Do you remember talking to Billy Redcloud about this .38 caliber pistol which is Exhibit No. 2?

A  I do.

Q  Do you remember what he told you about the pistol? Did he tell you that it was his, that he had stole (sic) it?

A  He did.

Q  That was Redcloud told you that?

A  That is correct."

After a recess, counsel for the state on redirect examination of Pasley read the foregoing part of the cross-examination to the witness and he reaffirmed his answers. Then the following appears :

"Q  Did Redcloud make any other statement to you in regard to that .38 caliber pistol?

A  He did."

Thereupon, counsel for defendant made objection out of the hearing of the jury to any question regarding the gun other than on the matter of ownership on the grounds of hearsay and prejudice. The objection was overruled and the following occurred :

"Q  (By Mr. DeCuyper)  What other statement did he make to you about the gun, or particularly Plaintiff's Exhibit No. 2?

A  He stated that Franklin Hall used a .38 special to hold up the restaurant."

Defense moved for a mistrial, which motion was denied.

It should be noted that the statement made by Redcloud and quoted by Pasley did not, in fact, identify *the* .38 caliber gun found in the glove compartment, Exhibit No. 2, as the alleged robbery weapon. Redcloud is quoted as saying :

"A.  He stated that Franklin Hall used *a* .38 special to hold up the restaurant."  (Emphasis supplied)

On the other hand, on *cross-examination* above set forth, Redcloud, as quoted by Pasley, referred to *the* gun, Exhibit No. 2, and the scope of his statement covered only the fact of his "ownership" of it and that he stole it.

Defendant here asserts that this testimony was hearsay, highly prejudicial and inflammatory, and denied him his constitutional right under the Sixth Amendment to confront the witnesses against him. The state counters this by the fact that since the defense opened up the subject of Redcloud's statements to Pasley about the gun that the doctrine of "curative admissibility" applies as an exception to the hearsay rule.

As is readily apparent, this trial "incident" in fact involves not only hearsay but also deeply-rooted constitutional principles involving the Sixth Amendment of the Constitution of the United States, which provides, in part:

> "In all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him; * * *"

This constitutional provision is applicable to this proceeding by reason of the Fourteenth Amendment of the Constitution of the United States prohibiting the deprivation of life or liberty without "due process of law." Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); State v. Brookins, 478 S.W.2d 372 (Mo.1972); State v. Rowlett, 504 S.W.2d 48 (Mo. 1974); State v. Jackson, 495 S.W.2d 80 (Mo.App.1973).

■ This right of confrontation is inseparable from the right to cross-examination and has been held to be among the fundamental guarantees of life and liberty and an essential and indisposable safeguard to a fair trial. Pointer v. Texas, supra; Douglas v. Alabama, supra; Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899). Even where a witness is dead or his presence by good faith efforts, cannot be secured, the admission of his testimony from a deposition or a transcript of a previous hearing is closely scrutinized and is only admissible if the accused's constitutional rights of confrontation and cross-examination have been ad-equately and carefully protected at the *prior* hearing or proceeding. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255 (1968); State v. Brookins, supra; State v. Jackson, supra. Even under such rare circumstances it seems elemental that those portions of the prior testimony which are inadmissible under established rules of evidence (such as hearsay) would be excluded upon proper objection and motion at the trial.

■ Here, the testimony of Pasley as to what Redcloud had told him during interrogation at the police station at St. Joseph was the rankest kind of hearsay. No attempt was made by the state to explain the absence of Redcloud. The record shows that at the time of the interrogation, neither the defendant nor Redcloud was represented by counsel. The defendant was not present during the interrogation of Redcloud. None of the safeguards of the Sixth Amendment were afforded the defendant, and it was error for the court to admit the hearsay statements of witness Pasley.

While admitting the hearsay character of this evidence, the state asserts that it was properly admitted under the doctrine of "curative admissibility" and relies principally upon the case of State v. Odom, 353 S.W.2d 708 (Mo.1962) to support its position. The doctrine of "curative admissibility" is a rule of evidence which we would be extremely reluctant to apply so as to deprive a defendant of his fundamental constitutional rights, such as, the right of confrontation as vouchsafed by the Sixth Amendment. But a close reading of *Odom* shows that it has no precedential value in the matter before us. It did not involve the constitutional right of confrontation, the testimony there under consideration was scientific in nature and was not hearsay, and *Odom* was decided three years prior to Pointer v. Texas, supra, and Douglas v. Alabama, supra, and prior to the Missouri appellate decisions following *Pointer* and *Douglas*. Also, the line of in-

quiry was clearly opened up by the defendant's own testimony in *direct* examination.

We hold that it was error for the trial court to admit this hearsay testimony and by so doing defendant was deprived of his Sixth Amendment right to confront Redcloud and to submit him to the searchlight of cross-examination.

We need not reach the other points raised by defendant since they are unnecessary to our decision.

For the reasons herein stated, the conviction and sentence of the defendant are reversed and this cause is remanded for proceedings consistent with this decision.

All concur.