STATE of Missouri, Respondent,

v.

Gregory Lynn JONES, Appellant.

No. WD 33259.

Missouri Court of Appeals, Western District.

Jan. 18, 1983.

Michael C. McIntosh, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant Jones was convicted of receipt of stolen property in violation of § 570.080, RSMo 1978 and was sentenced to a term of six years. The illicit property was described as a red 1973 Datsun 240Z. The defendant was captured by the police as he drove the vehicle, and after a high speed chase. On the day of trial, the prosecutor announced intention to call two witnesses who saw the defendant in possession of that vehicle some two weeks before. That occasion was when the defendant snatched the purse of witness Patricia Moore, then in the company of the other witness. The defendant moved in limine to exclude testimony of the prior crime. The court ruled to permit the testimony of the two witnesses that the defendant was in possession of the stolen car some two weeks earlier, but excluded the evidence of a purse-snatch. In the course of trial, first witness Moore—and then the other—described that the occasion for their observation and identification of the defendant was when he "robbed" Moore. The defendant contends that the testimony constituted evidence of a crime not charged, and so was prejudicial.

A person who receives, retains or disposes of the property of another [and knows or believes the property was stolen] for the *purpose to deprive the owner* of a lawful interest in the property commits the crime of receiving stolen property. § 570.-080. Thus, an element of the offense against the accused was to prove that defendant Jones had the *purpose*[1] *to deprive* the owner of the 1973 Datsun 240Z of a lawful interest in that vehicle. *State v. Williams*, 635 S.W.2d 55, 57[1] (Mo.App. 1982). Evidence of a crime other than the offense on trial results in prejudice because it tends to a conviction for conduct not charged against the defendant. *State v. Trimble*, 638 S.W.2d 726, 732[3, 4] (Mo. banc 1982). Thus, it is only where evidence of another crime bears legitimately to establish guilt of the offense on trial that it is received—as where the proof of a separate crime tends to establish motive, *intent* [*purpose*], absence of mistake or accident, or the *identity* of the defendant on trial or a common scheme which so encompasses two or more crimes that to establish one tends to prove the other. *State v. Wing*, 455 S.W.2d 457, 463[8–10] (Mo.1970). The interlocutory order to allow the testimony that the two saw defendant in possession of the Datsun on that earlier occasion but to exclude the criminal act of purse-snatch from that narrative was designed to accommodate that principle.

The direct examination of witness Moore by the prosecutor was faithful to the prescription of the pretrial order. He elicited that witness Moore was at a drive-in at a specified place in the city and at a specified time and that the defendant was then the operator of a red vehicle separated by just one car space. As she stood on a prominence and looked down, she saw the defendant glance at her and so she got a clear look at his face. The witness Moore was then in the company of Coy, the other witness.

The cross-examination was more prolonged and insisted on detail:

---

1. The *purpose* terminology of the recently enacted criminal code is equivalent to precode *intent*. The New Missouri Criminal Code:

Manual for Court Related Personnel § 7.3[§ 562.016], Culpable Mental State, Comments (1978).

Q: And you say you saw Mr. Gregory Jones here on that day driving a red car?

A: Yes.

Q: Do you know how long a time span, tell me if it was minutes, hours, seconds that you actually observed whom you believe to be Mr. Jones driving this automobile?

A: About five minutes.

Q: Did you have this person under your continual direct observation for five minutes?

A: I was standing on a knoll looking down and I had some packages in my hand and I was looking down into the car.

\* \* \* \* \* \*

Q: For about five minutes you stood there and looked at this person? Look at the clock.

A: Yes, I know.

Q: It would have been about five minutes, is that what you are saying?

A: Yes.

The cross-examination then turned to the recall of the witness of the clothes the defendant had on, and then returned to subject of visual contact between them. She explained that the defendant looked directly into her face for a matter of seconds, and that she had the car in direct view for about five minutes. The cross-examination then dealt with every detail of their relative points of vantage, so as to test the validity of her identification—and in the process, inquired again as to the relative positions of the cars, and the topography of the drive-in where the witness stood during these observations. That component of the cross-examination ended with the colloquy:

Q: Now, Mrs. Moore, you have told the jury and you have made a statement today that you believe that was Mr. Jones you saw that day?

A: Yes.

Q: Did you ever know Gregory Jones prior to April 14th 1981? [that day]

A: No.

The cross-examination resumed with questions as to the description of the Jones passenger—a mulatto male—and their departure from scene—"[h]e jumped into the car . . . [and they] took off."

The prosecutor then re-examined the witness:

Q: Miss Moore, I believe you have just testified, in response to a question asked by defense counsel, if you had an opportunity to observe the passenger?

A: Yes.

Q: Okay. And when did you first observe that passenger?

A: When he robbed me.

The defense counsel objected that the answer violated the pretrial order to avoid testimony of that prior and separate criminal episode. The court ruled that the response was induced by the insistent cross-examination for the detail of that encounter, and was justified. The other witness, Coy, then testified [over objection] that on the occasion he was in the company of witness Moore, a black male came up behind her, snatched a packet from her, and then jumped into a red Datsun 280Z [or 240Z], and told the driver "to go ahead and start moving." He noted the license number was PSX 614 [in fact, PSX 914]. The court ruled again that the evidence was a proper response to the cross-examination.

 The pretrial order to deny the prosecution evidence that the identification of the defendant by witness Moore was an incident of a separate criminal offense was interlocutory, and so subject to change as the trial process justified. *State v. Howell*, 524 S.W.2d 11, 19[6] (Mo. banc 1975). That it was the defendant Jones who, on the day of the arrest, retained the stolen Datsun was an element of the offense. That it was the defendant Jones the witnesses saw two weeks earlier in retention of that same stolen property was relevant, not only on the issue of identity, but also to prove another element of the § 570.080 offense—that Jones retained the Datsun with the purpose to deprive the owner of that lawful inter-

est. The intense and insistent cross-examination of witness Moore by defense counsel reasonably prompted the curiosity of the fact-finder as to why the witness was impressed so vividly and certainly with the identification features of the two black males—Jones and companion—so as to incur her recall. The witness was entitled to allay that doubt by the full circumstances of the encounter. *State v. Odom*, 353 S.W.2d 708, 711[4] (Mo.1962).

The rule of the court to allow the prosecution to inquire into the other aspects of the identification encounter, not touched by the defense cross-examination, was a fairness due. The defense examination was an attack on the basis for the identification of the occupant of the red Datsun on that occasion before arrest; it impugned the acuity of the observations of witness Moore on that occasion—and hence the credibility of that identification. It was calculated to create an inference that there was no occasion for Moore, or anyone else so situated, for the recall which constituted her testimony. The reason she remembered so well, the Moore response shows, was that she was made a victim of a crime by that very person who used the red Datsun to escape. The principle for admission of the full circumstances which encompassed the identifications by witnesses Moore and Coy that the defendant Jones was an occupant of the stolen Datsun on that earlier date is given in *State v. Odom*, 353 S.W.2d 708, 711[4] (Mo.1962):

> [W]here either party introduces a part of an act, occurrence, or transaction, . . . the opposing party is entitled to introduce or to inquire into other parts of the whole thereof, in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary . . . .

The purse-snatch, to be sure, was a separate offense from the receipt of stolen property for which Jones was charged and convicted. The purse-snatch and the escape by Jones and the other in the red Datsun, however, was a continuous episode. The use of the red Datsun—then already stolen—by the defendant Jones on that earlier occasion was relevant to the proof that Jones was the receptor of that stolen property with the purpose to deprive the owner of a lawful interest [the crime charged under § 570.080] and that the early use observed by the witnesses was admissible as part of that common scheme of criminal conduct. *State v. Mitchell*, 491 S.W.2d 292, 295[1] (Mo. banc 1973). To disallow the victim of the purse-snatch from the full narrative of the encounter with the defendant, an episode inherently integral, distorts the basis for her identification, disserves the factfinder, and unduly disadvantages the prosecution.

The authorities cited by the defense, *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954) are in agreement.

The judgment is affirmed.

All concur.