**STATE of Missouri, Respondent,**

v.

**Scott LEMON, Appellant.**

**No. KCD 26473.**

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1973.

Gerald Kiser, Public Defender, Liberty, for appellant.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

Appellant was convicted of selling a quantity of Methamphetamine HCl, a restricted drug, in violation of Section 195.-020 RSMo 1969, V.A.M.S., and was sentenced to 10 years in the Department of Corrections. From this conviction and sentence, he appeals.

The appellant (hereinafter called defendant) asserts five points upon which he seeks reversal.

*First*, the verdict was not based upon substantial evidence showing a sale of drugs by defendant to Donald Kenney as charged in the indictment. *Second*, the state's evidence rather "tended" to show a sale to one Ed Bowman, and therefore there was a fatal variance between the indictment and proof. *Third*, the court erred in giving Instruction No. 2, hypothesizing a sale by defendant to Kenney, since there was no evidence of such sale or that defendant aided or abetted another to make such sale. *Fourth*, the court erred in giving Instruction No. 4, stating the law on aiding and abetting, since there was no evidence to support that theory of guilt. *Fifth*, the court erred in admitting State's Exhibit No. 1, an envelope and box containing a drug; that said exhibit was not properly identified as connected with the offense charged or with the defendant, in that the chain of evidence of possession, custody and identification thereof was incomplete.

For the disposition of this appeal, the defendant's position may be further condensed and summarized. Basically, he apparently takes the position that if the state's evidence established that he made a sale of restricted drugs the buyer was one Ed Bowman, not Donald Kenney, as charged in the indictment and submitted to the jury. He further asserts there was no evidence that he aided or abetted any subsequent sale by Ed Bowman to Donald

Kenney. Lastly, he asserts that State's Exhibit No. 1 should not have been received in evidence because its chain of custody and possession from Kenney to the trial (a period of 9 months) was not sufficiently established.

Proper determination of the problems, thus presented, requires a somewhat detailed review of the evidence. Neither defendant nor Ed Bowman testified.

■ We recognize the rule that in determining the sufficiency of the evidence, this court accepts all evidence, circumstantial or direct, tending to support the conviction together with all favorable inferences reasonably to be drawn therefrom. State v. Harris, 485 S.W.2d 612 (Mo. 1972); State v. Petrechko, 486 S.W.2d 217 (Mo.1972).

The indictment, under which the defendant was tried, charged that on December 8, 1971 he "did then and there wilfully, unlawfully, feloniously and knowingly *sell to Donald E. Kenney*" (emphasis supplied) a quantity of Methamphetamine HC1, a controlled substance. In the light of this indictment, we will summarize the evidence in the two areas vital to the determination of this appeal and the resolution of the points urged by the defendant.

*As to the sale.* Donald E. Kenney was an undercover narcotics agent for the Gladstone, Missouri police department. He posed as a drug user in order to gather information and evidence for the prosecution of narcotic cases in Clay County, Missouri.

He testified that his only encounter with the defendant (whom he had not known before) was at the home of one Ed Bowman. Kenney, under the name of Dave Johnson, went to the Bowman home at about 7:40 p. m. on December 8, 1971 and found the defendant sitting behind the wheel of an automobile in Bowman's driveway. Another man, not further identified in the record, was sitting in the rear seat of the car. Kenney approached the car and asked the defendant if "Ed" was at home. The defendant replied "Yeah" and asked Kenney if he was "Dave". Kenney replied that he was and asked the defendant if he was "Scott". The defendant said that he was and "indicated that they had been looking for me" (Kenney-Johnson). About that time, Ed Bowman came out of his house and stood at the driver's window and Kenney stood behind Bowman next to the left rear door of the car.

Kenney testified that the defendant then handed Ed Bowman a small piece of aluminum foil, two small pieces of aluminum foil stuck together; Bowman fumbled around with it and couldn't get it apart and handed it back to the defendant; the defendant then took "them" apart and handed "them" back to Bowman; Bowman then handed Kenney one of "them" in the presence of the defendant and the defendant asked Kenney how he was going to use it and Kenney replied he would probably "snort it" and the defendant pointed to the unidentified man in the back seat and said "He knows all about snorting"; Bowman then handed the defendant a twenty dollar bill; the price was apparently eighteen dollars and the defendant said he did not have any change and Bowman then stated that "he would trust him for the money". Later that evening, Kenney gave Ed Bowman six dollars for the part of the substance that Kenney retained.

Kenney further testified that he had known Ed Bowman before and had talked to him earlier about trying to buy some "speed" from the defendant. Bowman did not testify and is not further identified in the record.

On cross-examination of Kenney, this appears:

"Q. You did not pay or give the defendant anything, did you?

A. No.

Q. You did not receive directly from the defendant anything, directly?

A. No."

This was the only testimony offered by the state as to the *sale* charged in the indictment.

*As to custody and possession of Exhibit No. 1.* Kenney testified that he did not mark the aluminum foil packet received from Ed Bowman in any way for identification, but that he did deliver it to his superior officer, Captain Arthur L. Piburn, at 9:45 p. m. the evening of December 8, 1971.

Kenney was handed State's Exhibit No. 1 and was asked to open it while on the witness stand. It was an envelope in which was a box within which was an aluminum foil packet which Kenney stated "Appears to me to be the same one" he received, although the packet "had not been folded" as was the one in Exhibit No. 1. From the witness stand Kenney unfolded the packet, opened it and examined its contents. He stated that the white powder which it contained was "a substance similar" to that contained in the packet he received from Bowman. On cross-examination, the following appears:

"Q. You cannot here today tell this jury absolutely that this is the same packet that you received on that occasion, can you?

A. I don't have it marked, no, sir.

Q. You can't tell them that's the same packet, can you?

A. No, sir."

Arthur L. Piburn, Captain of Detectives, of Gladstone, Missouri testified that he received an aluminum foil packet containing a white powder or crystals from undercover agent Kenney at about 9:45 p. m. on December 8, 1971. He "assigned it a case number", placed it in a pill box and the box in an envelope both containing the date, time and where received and then sealed the envelope and placed it in his locker. He identifies State's Exhibit No. 1

as the pill box and evidence envelope. Only Captain Piburn and Sergeant Mullenix had access to this evidence locker. Piburn assigned Mullenix to transport this evidence to the Kansas City, Missouri police laboratory. Piburn testified that he had brought the evidence envelope and enclosed box to the prosecuting attorney at the start of the trial and had handed it to him in the hallway. He stated, however, that it was not then sealed with his identification seal and that he did not therefore know what was in the box.

Sergeant Russell Mullenix testified that at the direction of Piburn, he took the sealed envelope to the Kansas City police laboratory on December 22, 1971. He thereafter picked up an evidence envelope at the laboratory on January 6, 1972 and returned it to Captain Piburn. He had no knowledge of what was in the envelope at any time.

Karen Huselton is a chemist for the Regional Crime Laboratory at Kansas City. Her duties include the analysis of drug samples. She identified State's Exhibit No. 1 as having been brought to the laboratory on December 22, 1971 by Sergeant Mullenix. There were then *two* boxes in the evidence envelope—when she received it, one dated December 8, 1971 and the other dated December 15, 1971. Mullenix did not deliver these to her personally on December 22, 1971 but to someone else (whose identity was unknown to her) at the laboratory. She did not remember whether the evidence envelope was sealed when received by her for analysis. Her analysis showed that the pill box marked December 8, 1971 contained a powder form of Methamphetamine, a "speed" drug. She does not know the exact date of her examination but it was sometime during the week of December 22, 1971, since her chemical report is dated December 29, 1971. Upon receipt from Sergeant Mullenix the laboratory would give him a detailed written receipt. No such receipt was proffered by the state.

This prosecution was based upon Section 195.020 RSMo 1969, V.A.M.S., which provides in pertinent part:

"Prohibited acts

It is unlawful for any person to manufacture, possess, have under his control, *sell*, prescribe, administer, dispense, distribute, or compound any controlled * * * substance" (Emphasis supplied)

■ The indictment clearly, simply and unequivocally charges the defendant with a prohibited *sale* of a controlled substance to *Donald Kenney*. The state was not required to set forth in the indictment the name of the buyer. Our Supreme Court has held that the statute involved makes it an offense to sell the controlled substance to *any* person and, while it is desirable, it is not necessary that the name of the buyer be set forth in the indictment. The buyer's identity is not an essential element of the offense. State v. Taylor, 375 S.W.2d 58 (Mo.1964). In *Taylor*, the name of the buyer was set forth in the indictment but the day before trial the prosecutor substituted an information wherein the name of the buyer was changed from "James A. Snokhaus" to "James Larson". The defendant claimed that the information charged a new and different offense. The court in rejecting this position said, 1. c. 63:

"The identity of the purchaser was not in dispute. Appellant made no claim that James Larson is a different person than James Snokhaus."

■ We are here faced with a much more vital problem than was the court in *Taylor*. Here, there is no dispute that Donald Kenney and Ed Bowman *are in fact two different persons*. The defendant was specifically charged with a sale to *Kenney* and the state did not substitute an information charging a sale to *Bowman*, as permitted under Rule 24.02, V.A.M.R. The cause was submitted, in the State's verdict directing instruction, to the jury upon the hypothesis of a *direct sale* to Kenney and

the defendant was convicted and sentenced to 10 years upon the hypothesis. The record before us does not warrant the charge, instruction or finding of a direct sale by defendant to Kenney. Rather, the evidence supports a finding of a direct sale by the defendant to Ed Bowman. While a charge in an indictment or information of a sale to a particular person could be treated as surplusage (if the proof showed that, in fact, the sale was to another, since the identity of the buyer is not an essential element of the offense) the submission must ordinarily conform to the facts proved. Instructions to a jury in a criminal case must be based upon the evidence adduced.

It is our view, and we so hold, that the record before us shows that two sales under Section 195.020 RSMo 1969, V.A.M.S., were shown by the evidence. The first of these was a sale from the defendant to Ed Bowman. The second was a sale from Ed Bowman to Donald Kenney.

Section 195.010(30) RSMo 1969, V.A.M.S., Narcotic Drug Act, Definitions, states:

"(30) *'Sale'* includes barter, exchange, or gift, or offer therefor, *and each such transaction made* by any person, whether as principal, proprietor, agent, servant or employee;" (Emphasis supplied)

In noting this definition the Supreme Court held that the evidence established such a sale in State v. Sykes, 478 S.W.2d 387 (Mo.1972) and said, 1. c. 390:

"In short, Agent Snokhous and defendant Sykes bartered for a quantity of marijuana, a price was established between them, defendant took the agent's money, and the agent got defendant's marijuana. Such a transaction falls within the meaning of sale as defined by Section 195.010(29), RSMo 1959, the court's instruction, and State v. Davis, supra."

In *Sykes*, the trial court instructed the jury that "sell" as used in the instructions meant the acceptance of payment for and

delivery of an article at a fixed price to be paid for the article.

■ The consideration to support such a sale need not be in money, but can be in other things of value, State v. Davis, 450 S.W.2d 168 (Mo.1970), and delivery is a material element of such a sale, State v. Schlagel, 490 S.W.2d 81 (Mo.1973).

■ It can thus be seen that the usual elements of a commercial sale have been applied to a sale of restricted substances under Section 195.020 RSMo 1969, V.A.M. S.

Applying these standards to the facts before us (gleaned entirely from the state's evidence) a sale was consummated and completed as between the defendant, as seller, and Ed Bowman, as buyer, on December 8, 1971. An agreed price was paid by Bowman and the "merchandise" then and there delivered to Bowman by the defendant.

A second sale then develops from the testimony of Kenney. One from Bowman as seller to Kenney as buyer for a portion of the "merchandise". While there is evidence that Bowman handed Kenney part of the drug in the presence of the defendant at Bowman's home, there is no evidence that Kenney then retained it (and there is positive and definite proof that he, Kenney, did not pay Bowman until "later that evening") or that any temporary credit was extended. This second *sale* (for cash) would not be completed until both the merchandise and the cash consideration had been exchanged.

None of the elements of a *direct sale* from defendant to Kenney appear from the first transaction.

■ Apparently realizing this marked variance as between the charge in the indictment and the evidence, the state submitted its case to the jury upon the premise of defendant's guilt in "aiding and abetting" Ed Bowman in the second sale of part of the narcotic to Officer Kenney. If facts supportive of the aiding and abetting theory were established, it was entirely proper that the case be submitted on such theory and the fact that the indictment, in direct terms, charged a sale from defendant to Kenney would not corrupt the judgment.

Section 556.170 RSMo 1969, V.A.M.S., provides:

"Accessories defined Every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree."

■ It has been consistently held that this section of our statutes in fact abolishes all distinction between principals to a crime and accessories before the fact, or "aiders" and "abettors", if certain facts are shown. State v. Cline, 452 S.W.2d 190 (Mo.1970); State v. Siekermann, 367 S. W.2d 643 (Mo.1963); State v. Prigett, 470 S.W.2d 459 (Mo.1971); State v. Reed, 453 S.W.2d 946 (Mo.1970). Among the essential facts necessary to hold an accessory before the fact, as a principal to the crime, are that he "aided, abetted, assisted or encouraged" the criminal act, State v. Stidham, 449 S.W.2d 634 (Mo.1970); that he "associated himself with the venture" or "affirmatively participated in it as something he wished to bring about", or that he sought "by his action to make it succeed" or that he was engaged in a "common cause" or "common design" and that there was an *"intent* to encourage or abet the crime committed." State v. Grebe, 461 S. W.2d 265 (Mo. banc 1970); State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 343 (1938); State v. Irby, 423 S.W.2d 800, 803 (Mo.1968); State v. Castaldi, 386 S.W.2d 392, 395 (Mo.1965); State v. Butler, 310 S.W.2d 952, 957 (Mo.1958).

A conspiracy in its ordinary sense need not be shown, nor is actual physical presence at the commission of the crime a necessary element in order to support a conviction as an accessory under Section 556.170 RSMo 1969, V.A.M.S. State v. Slade, 338 S.W.2d 802 (Mo.1960); State v. Lee, 404 S.W.2d 740 (Mo.1966); State v. Woody, 406 S.W.2d 659 (Mo. 1966). On the other hand, a defendant's mere presence at the scene of the crime, without more, is insufficient to render a defendant an aider and abettor. State v. Castaldi, supra; State v. Allen, 420 S.W.2d 330 (Mo.1967). Likewise, it is not necessary for the state to prove that the defendant personally did all of the things which together make up the elements of the crime, State v. Reed, supra.

However, an accessory before the fact "may be indicted as though he were the principal, without setting out the facts by which he aided and abetted, or advised and procured, the commission of the crime." 42 C.J.S. Indictments and Informations § 148; State v. Spica, 389 S.W.2d 35, 40 (Mo.1965); State v. Lunsford, 331 S.W.2d 538 (Mo.1960).

We, therefore, hold under the above principles, that the indictment in the matter before us was not faulty and that the variance between its charge and the proof does not constitute prejudicial error requiring reversal.

However, we must reverse and remand this cause because of a primary and fundamental error in the submission of this case under the evidence.

In Instruction No. 2, the court instructed the jury upon the exact hypothesis of the indictment. This instruction, in pertinent part, reads:

"The court instructs the jury that if you find and believe from the credible evidence in this case and beyond a reasonable doubt *that the defendant, Scott Lemon, did* on the 8th day of December 1971 at the County of Clay and State of Missouri, wilfully and feloniously and knowingly *sell to Donald E. Kenney* a quantity of \* \* \*'' (Emphasis supplied)

The trial court also gave the jury Instruction No. 4, which states:

"All persons are equally guilty who act knowingly with a common intent in the commission of an offense and an offense so committed jointly by two or more persons is the act of each and all, and whatever any does in furtherance of the unlawful act is in law the deed of each of such persons."

It thus appears that by the time this cause was submitted to the jury, the state had properly concluded that if the defendant was to be found guilty at all, it was in a role of "aider and abettor" under Section 556.170 RSMo 1969, V.A.M.S. Assuming, but not deciding, that there was sufficient competent evidence to justify such submission, that is to say that the defendant aided and abetted Ed Bowman in the sale of the restricted substance to Kenney in such a manner as to bring him within the principles delineated in the above-cited authorities and thus fix upon him legal responsibility as principal with Bowman, Instruction No. 2 should have required some factual finding to this effect.

In prior decisions involving the responsibility of a defendant for the conduct of others, the courts have approved submissions which ranged from full-blown factual hypothesis of the aider and abettor's participation in the crime, State v. Stidham, 305 S.W.2d 7 (Mo.1957); State v. Chernick, 303 S.W.2d 595 (Mo.1957); State v. Cooley, 387 S.W.2d 544, 549 (Mo.1965); State v. Deiter, 446 S.W.2d 609 (Mo.1969), to a required finding such as that defendant "acting jointly with others" or "in company with one William Taylor", State v. Gentry, 320 Mo. 389, 8 S.W.2d 20, 27–28 (1928) or "either alone or knowingly acting in concert with another or others", State v. Richetti, supra; State v. Reece,

324 S.W.2d 656 (Mo.1959); State v. Tierney, 371 S.W.2d 321 (Mo.1963).

In the case before us, the jury was given no instructional guide whereby it could properly apply the abstract principles as contained in Instruction No. 4 to the facts. State v. Richetti, supra.

Further, Instruction No. 2, as a verdict director, is erroneous since it did not require the further finding that such aid was given by the defendant "with the intent to encourage and abet the crime committed", an essential element of the state's case. Thus, Instruction No. 2 lacks both the required finding of the basic facts and of intent and is therefore doubly erroneous. State v. Grebe, supra. Grebe has been consistently followed, although some later cases have distinguished it where the facts showed that the defendant actively participated in the crime as a principal in the first degree.

We hold that the giving of Instruction No. 2 was error and that as a result the defendant was deprived of his substantial right to have the trial court clearly and accurately instruct the jury on the law of the case and he was therefore not accorded a fair and impartial trial.[1]

What we have said disposes of the first four points raised by the appellant and no further discussion of them is necessary. Some comment may be appropriate as to the fifth point with reference to the admissibility of State's Exhibit No. 1, purportedly the drug purchased by Kenney from Bowman.

Appellant asserts that the court erred in admitting this exhibit into evidence over his objection in that the exhibit was not sufficiently identified as connected with the offense or the defendant and that the evidentiary chain of possession and custody was broken and Officer Kenney was unable to identify it as the substance received by him from Ed Bowman (the first link in the chain). The evidence of the state on this point has been summarized above.

The purpose of the chain of custody and possession rule is, of course, to vouchsafe assurance that the exhibit has not been altered or tampered with and that there has been no substitution. State v. Orr, 493 S.W.2d 374 (Mo.App.1973); State v. Baines, 394 S.W.2d 312 (Mo. 1965). To meet this burden, the state is not required to exclude every possibility of these occurrences, State v. Baines, supra, nor to show that some credible witness retained the exhibit in his personal possession or under constant watch, State v. Rose, 428 S.W.2d 737 (Mo.1968). Evidence which provides a reasonable assurance that the exhibit is the same and in the same condition meets the test, State v. Baines, supra.

Doubts plague us as to whether the evidence in this record meets this test. See: State v. Sockel, 490 S.W.2d 336 (Mo.App. 1973). Since, however, this case is remanded for another trial, we are confident that counsel will dispel such doubts by a further exposition of the custody and possession of State's Exhibit No. 1 and we refrain from ruling this point on this appeal.

The judgment of conviction is reversed and the cause remanded.

All concur.

---

1. If this case is retried, the problems here discussed with reference to the instructions under the existing case and statutory law will no longer exist. Effective January 1, 1974, the Supreme Court has adopted Missouri Approved Instructions—Criminal, the use of which are mandatory in all felony cases. Approved Instructions 2.10, 2.12 and 2.14 will obviate any further confusion with reference to the liability of an aider and abettor. The committee drafting and proposing these instructions and the Supreme Court in adopting them discards as archaic the use of the term "abet" or "abettor" and substitutes in its stead the words "encourage" or "encourager".