STATE of Missouri, Respondent,

v.

Dwain L. GARDNER, Appellant.

Nos. 9917, 9918.

Missouri Court of Appeals, Springfield District.

Feb. 25, 1976.

John C. Danforth, Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for respondent.

William H. Wendt, Springfield, for appellant.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

■ On October 15, 1973, two indictments in three counts were returned jointly charging defendant et alii with selling controlled substances (Ch. 195, V.A.M.S.) to Bill McConnell, an undercover agent for the Springfield-Greene County Narcotics Bureau. Defendant and Peggy Gardner, then cohabitants, allegedly made sales of a salt of amphetamine and cocaine, respectively, on January 17 and 29, 1973; defendant and Larry Tate were charged with a January 18, 1973, sale of heroin. At the court-tried joint trial of defendant and Peggy on the consolidated cases represented by the two indictments, it was indicated that Tate previously had been acquitted; we do not know the disposition of the charges against Peggy. The trial court found defendant guilty on all three counts, which findings had the force and effect of a jury verdict. Rule 26.01(b), V.A.M.R.; *State v. Daniels*, 487 S.W.2d 465, 469[4] (Mo.1972). No motion for a new trial was filed and none was needed in this court-tried case for purposes of appellate review. Civil Rule 73.01–2(b), V.A.M.R., is made applicable to criminal cases by Criminal Rule 28.18, V.A.M.R. *State v. Bruns*, 522 S.W.2d 54, 55[1] (Mo. App.1975). The court sentenced defendant to five years for selling heroin and to five years for selling cocaine, with the sentences to run consecutively; the five year sentence imposed for selling a salt of amphetamine was to run concurrently with the other two sentences.

Defendant raises four points on appeal. Two are interrelated and will be considered together. In fine, they are that the trial court erred in overruling his motions to quash and dismiss the indictments because the delay of nine months between the time of the alleged offenses and the return of the indictments deprived him of his right to a speedy trial and to due process of law as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. N.B.—defendant does not complain of the period which elapsed between the return of the indictments and the time he was tried on the charges.

■ The delay which occurred between the charged offenses and the indictments gave rise to a claim under due process rather than under the Sixth Amendment's guarantee of a speedy trial. *United States v. Washington,* 504 F.2d 346, 347[1] (8th Cir. 1974). Defendant's right to a speedy trial under the Sixth Amendment did not come into being until the indictments were filed. "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *State v. York,* 511 S.W.2d 758, 761[1] (Mo.1974); *State v. Odzark,* 532 S.W.2d 45 (Mo.App.1976). Therefore, defendant's reliance on the Sixth Amendment to support the claim that he was denied a speedy trial because of the hiatus between the offenses and the return of the indictments is misplaced.[1]

In *Marion,* the Supreme Court of the United States observed that "since a criminal trial is the likely consequence of our judgment and since appellees may claim actual prejudice to their defense, it is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, . . . the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. . . . However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. . Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." 404 U.S. at 324–325, 92 S.Ct. at 465. In elucidation, it is said that resolution of a claim that due process has been denied because of a delayed arrest or indictment, requires "a process of balancing the reasonableness of the delay against any resultant prejudice to the defendant." *United States v. Jackson,* 504 F.2d 337, 339[6] (8th Cir. 1974), cert. denied, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *United States v. Norton,* 504 F.2d 342, 344[1] (8th Cir. 1974), cert. denied, 419 U.S. 1113, 95 S.Ct. 790, 42 L.Ed.2d 811 (1975). "While justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed." *Smith v. United States,* 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959).

Defendant trusts *Ross v. United States,* 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), and *Woody v. United States,* 125 U.S.App. D.C. 192, 370 F.2d 214 (1966), to serve his claim for release because of the preindict-

---

1. As acknowledged in *Marion, supra,* 404 U.S. at 316 n. 8, 92 S.Ct. 455, while several courts have spoken, perhaps erroneously, of preindictment delay as involving the Sixth Amendment, the cause for dismissal has actually been based on denial of due process.

ment delay. Without employing a detailed critique of those authorities as a make-weight for this writing—which any interested reader may do for himself—it is enough to recast what the court of origin has said regarding the application and limitations of *Ross* and *Woody.* "The narcotics prosecutions which have caused our concern in *Ross v. United States, supra,* and the dozen or more later opinions, rely fundamentally upon an identification of a defendant as a result of a single brief contact by a Government witness who, in a relatively short period of time, has participated in a substantial number of virtually identical transactions. Confining our distinction from the Ross-type case only to the facts in the present case, we observe that the nature of the Government's proof in support of the several counts of the indictment is not of the nature that is blurred, obscured, dissipated, or destroyed by the passage of the period of time involved in this case." *Tynan v. United States,* 126 U.S.App.D.C. 206, 376 F.2d 761, 763, cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967). Again see *Marion,* 404 U.S. at 317 n. 8, 92 S.Ct. at 461: "There is a unique line of cases in the District of Columbia Circuit concerning pre-indictment delay in narcotics cases where the Government relies on secret informers and (frequently) on single transactions. These cases take a more rigid stance against such delays, but they are based on the Court of Appeals' purported supervisory jurisdiction and not on the Sixth Amendment."

Defendant's argument that the preindictment delay denied him due process of law wends this path: The delay was an unnecessary conscious act on the part of the state; the delay was of such a duration that defendant, even with the aid of Peggy's memory, could not reconstruct or remember what had transpired on the dates of the alleged offenses; the evidence against defendant consisted of testimony by adverse witnesses who had no independent recall of the involved events and who were dependent on notes to refresh their recollections;

and the delay could have been shortened because the usefulness of McConnell as an undercover agent was virtually exhausted after March 1973, as he had made only five "buys" after that time. In pretrial hearings, defendant asseverated that he had suffered amnesia (total in some areas and scattered in others) as the result of a May 6, 1973, vehicular accident. Indications that this claimed condition would be used to augment the alleged prejudice to him by reason of the preindictment delay have been forsaken on appeal in favor of another point to be considered anon.

Merely because the preindictment delay was admittedly a conscious act on the part of the state would not singly sustain defendant's claim of a denial of due process. Representatives of the narcotics bureau and the prosecuting attorney presented testimony to the effect that the delay, at least in part, was necessary due to limited personnel and financial resources; it was not practical or economical to permit an undercover agent to be "burned," i. e., publicly identified, every time a case could be made. Because of restricted manpower and money, the bureau attempted to maintain the agent's cover until he could go as far as possible, not only with a particular subject, but in making "lateral progress" by trying to find other and more people involved in the sale of drugs. "[W]e respect the [state's] need to keep the identity of such informants and agents confidential, both to protect their safety and to continue to use them effectively." *United States v. Jackson,* supra, 504 F.2d at 340. Moreover, we can appreciate the fact that the revelation an undercover agent had been at work would quickly be disseminated to many in the community engaged in selling controlled substances. Such news would serve to deplete the effectiveness of other informants and agents, and thwart the overall efforts of the authorities to lay hold of as many sellers as possible. Thus, the process of balancing the reasonableness of the delay against any resultant prejudice to defend-

ant cannot be concerned solely with the activities of a single agent.

Unlike the government's witnesses in the Ross-type cases, agent McConnell's testimony of his "buys" from defendant and the co-indictees was not steeped in remembrances blurred, obscured, dissipated or destroyed by the passage of time. McConnell had known defendant "from grade school and high school," and had been a fellow employee of Larry Tate at a food processing plant. The agent had three separate encounters with Peggy Gardner—the first of which (as corroborated by Peggy) was when she greeted him at the threshold of the house where the "buys" were subsequently made with a double-barreled shotgun. Defendant's argument that the state's witnesses needed to resort to notes to attain any recall of the events surrounding the charged offenses, strays precariously from the truth. Note referrals were made in areas collateral to the actual "buys," as memoranda references were employed principally to establish the sequence of handling the controlled substances as they were processed through the narcotics bureau into the possession of the crime laboratory director for analysis. McConnell's meetings with defendant and the others indubitably outclass the agent's single brief contacts with strangers prevalent in the Ross-type cases, and McConnell's particularized retracings of the involved dealings attested to the accuracy of his independent reminiscences.

■ The evidence does not show, nor does defendant contend, that the preindictment "delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion,* supra, 404 U.S. at 324, 92 S.Ct. at 465. Rather, the thrust of

defendant's claim of prejudice seems centered on the assertion that the delay was so extended neither he nor Peggy (as they both so testified) was able, after a nine-month lapse, to remember the events of January 17, 18 and 29, 1973, or their averred associations with agent McConnell on the occasions in question.[2] Of course, whether or not defendant or Peggy actually could not remember was wholly subjective to them, and it was for the trial court, sitting as a jury at the trial and as trier of the facts on the motions, to pass upon the credibility of the witnesses and the weight of the evidence. *State v. Hirsch,* 260 S.W. 557, 558[4] (Mo.App.1924), cert. dismissed, *State ex rel. Hirsch v. Allen,* 274 S.W. 353 (Mo.1925). In such capacities, the court was not bound to accept as true defendant's or Peggy's testimony that they could not remember. *State v. Hamel,* 420 S.W.2d 264, 267 (Mo.1967).

■ The trial court was not impressed, apparently, with the avowal that the preindictment delay had produced a total lack of recall on the part of defendant and Peggy, and its disbelief could have come, in part, from Peggy's display of remembrance of the shotgun incident. The rulings on the motions to quash and dismiss the indictments indicate a finding by the trial court that the delay did not cause substantial prejudice to defendant's rights to a fair trial. Upon review we find no error in the denial of the motions based on defendant's due process guarantees. *United States v. Ybarra,* 430 F.2d 1230, 1232[1] (9th Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 589, 27 L.Ed.2d 636.

■ In his third point defendant says the trial court erred in failing to quash and

2. "The accused in the delayed arrest cases might not recall where he was or what he was doing on a specific day, but like any other person he is capable of knowing whether or not he ever was at a certain place or performed certain acts attributed to him. That he cannot recall at trial where he was at a particular time does not mean that

he cannot with certainty remember, if it be true, that he was never, certainly not at a particular time, at a particular location, and that he never sold a package of drugs." *Wilson v. United States,* (dissenting opinion), 129 U.S.App.D.C. 107, 391 F.2d 460, 468, n. 3 (1968).

dismiss the indictments "for the reason that [defendant] could not recall the events of the date of the alleged offenses because of an amnesia condition and therefore could not receive a fair trial or effective assistance of counsel." More important for present purposes, however, is not what defendant claims in his point, but what he does not and never has claimed, id est, he does *not* claim that as a result of mental disease or defect or amnesia he lacked the capacity to understand the present proceedings against him or to assist in his own defense; he does *not* claim he was not responsible for the criminal conduct charged because, as a result of mental disease or defect or amnesia, he did not know or appreciate the nature, quality or wrongfulness of his alleged conduct on the dates of the averred sales of controlled substances; and he does *not* claim that he was incapable at any time of conforming his conduct to the requirements of the law because of any mental disease or defect or amnesia.

Defendant testified at length on the motions to quash and dismiss the indictments. His answers to questions propounded upon direct and cross-examinations and those put to him by the court, indicated clear recall in some areas and a claimed lack of recall in others. As previously indicated, defendant described his claimed amnesic condition as being "total about some things and scattered about others." To the admittedly conclusionary declaration by defendant that he had not been able to assist counsel in preparing the defense, it was iterated that the inability to assist was limited to defendant's lack of ability to "tell us about what happened" on the days the controlled substances were allegedly sold.

In this area, the concern of many courts is the very real danger that amnesia can be feigned easily and that discovery of proof of feigning and malingering is difficult. But consideration of that aside, if a defendant has, in fact, developed an amnesia preventing his recollection of the day or days in question, this would not constitute a defense if defendant has sufficient present ability to consult with defending counsel with a reasonable degree of rational understanding and is possessed of a factual understanding of the proceedings against him. *United States v. Sullivan,* 406 F.2d 180, 185[2, 4] (2d Cir. 1969). Limited amnesia of the type claimed here does not totally incapacitate the defense. While defendant is entitled to a fair trial, he cannot insist upon a perfect trial. *State v. McClendon,* 103 Ariz. 105, 437 P.2d 421, 425, 46 A.L.R.3d 537, 543 (banc 1968). For a collection of cases considering whether amnesia may affect a defendant's capacity to stand trial and to receive a fair trial, see Annot., 46 A.L.R.3d 544.

Defendant's evidence of his alleged inability to remember the events occurring on the dates in question was not proof that he was incapable of knowing, understanding and appreciating the nature, quality or wrongfulness of his alleged conduct; neither did the evidence demonstrate that the amnesia, if granted, produced a lack of capacity to understand the proceedings against him or to assist counsel in his own defense. Amnesia is no bar to prosecution of an otherwise competent defendant. *United States v. Stevens,* 461 F.2d 317, 320[4] (7th Cir. 1972), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218. Since the only form of amnesia asserted would not justify a finding of incompetency, and as defendant did not seek any sort of special competency examination or hearing, nor request findings of facts and declarations of law be made specially, the trial court was not required, sua sponte, to order such an examination, conduct such a hearing, or render specific findings and declarations. *Stevens,* supra, 461 F.2d at 320–321; Rules 25.06 and 26.01(b), V.A.M.R.

■ Defendant's final point complains that the trial court should have sustained his motion for judgment of acquittal (Rule

26.10, V.A.M.R.) "for the reason that the State failed to prove the necessary elements of the crime for which the appellant can be charged." This point is written in utter disregard of the mandate of Rule 84.04(d), V.A.M.R., applicable in criminal cases through the direction of Rule 28.18, V.A.M.R. *State v. Vineyard,* 497 S.W.2d 821, 825 (Mo.App.1973). Defendant's point does not state the nature of "the crime for which the appellant can be charged;" but assuming the point refers to the offenses with which defendant was charged herein, it does not undertake to state "wherein" the state failed to prove the necessary elements of the charged crimes, nor "why" the elements (whatever they may be to defendant) were not proved. Defendant's point should have precisely isolated the issues and the facts relating thereto [*State v. Dennison,* 428 S.W.2d 573, 579[8] (Mo.1968)] because an appellate court is not required to search either the transcript on appeal or the argument portion of the brief to discover the meaning of a point presented in conclusionary and abstract fashion. *State v. Yearwood,* 510 S.W.2d 43, 44[2] (Mo.App.1974). The point preserved nothing for review. *State v. Foster,* 513 S.W.2d 657, 659 (Mo.App.1974).[3]

Nevertheless, lest defendant by his last point may have been contending the evidence was not sufficient to sustain the conviction—an area which constitutes plain error affecting substantial rights within the meaning of Rule 27.20(c), V.A.M.R. [*State v. Williams,* 416 S.W.2d 71, 74[6] (Mo.1967)]—we have, ex gratia, resorted to the argument part of the brief to come by defendant's meaning of the point. We find that rather than complaining of the sufficiency of the evidence to support the conviction, defendant contends "the State did not establish a necessary chain of evidence connecting the items taken from the [defend-

ant] and the nature of the substance offered and admitted into evidence at trial." From this, and after reading defendant's entire argument on the point, it became apparent that defendant is claiming the court nisi erred in allowing the controlled substances allegedly purchased from defendant to be received in evidence without showing they were held in an unbroken chain of possession from the time they were sold by defendant until such time as they were introduced into evidence. Inasmuch as this point has not been preserved properly for review we will discuss it in summary fashion only.

■ We have read the transcript and find the final point without merit. The only case cited by defendant to this point is *State v. Sockel,* 490 S.W.2d 336, 338[1] (Mo.App.1973), where the "record discloses not one iota of evidence, documentary, oral or otherwise, to connect the findings of the laboratory with the items found in the cab with the defendant." That was not the situation here. In the instant case there was oral and written evidence as to what was done with the substances after they were obtained from defendant, how they were packaged and marked for identification, how they were placed in evidence envelopes and initialed when passed from one agent to another, how and when they were delivered to the crime laboratory for analysis, and how they were kept until produced at trial. Granted, the agents at times could not independently recall making delivery of a particular exhibit to another agent or to the laboratory, yet the markings of the exhibits and the notations made on the evidence envelopes containing the exhibits attest to an orderly and regular procedure of custody, possession and control. We said in *State v. Alderman,* 498 S.W.2d 69, 72[3–6] (Mo.App.1973), "The chain of control, custody or possession requirement is to prevent

---

**3.** Under "Points Relied On" in defendant's brief, four points are supposedly presented. However, they are all penned in identical language. It was only through a gratuitous

reading of the argument portion of the brief that we were able to ascertain that the points were actually different.

alteration of or tampering with exhibits or any substitution. But it is not required that some witness must have continually kept a watch on the exhibit or retained it in his personal possession. *State v. Rose,* 428 S.W.2d 737, 740[2–3] (Mo.1968). . . . ' "[t]he evidence need not exclude every possibility that something in the interim of [the sheriff's] possession disturbed or interfered with the exhibit. It is sufficient if the evidence shows reasonable assurance that it was the same and in the same condition." ' *State v. Everett,* 448 S.W.2d 873, 877 (Mo.1970)."

The judgment in the consolidated cases is affirmed.

All concur.