**STATE of Missouri, Plaintiff-Respondent,**

v.

**Clifford L. GARDNER, Defendant-Appellant.**

**No. 10462.**

Missouri Court of Appeals, Southern District, Division Two.

May 23, 1980.

Motion for Rehearing and for Transfer Denied June 18, 1980.

Application to Transfer Denied July 15, 1980.

---

1. We affirmed the convictions in *State v. Davis*, 556 S.W.2d 745 (Mo.App.1977).

John D. Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Michael Baker, Springfield, for defendant-appellant.

PER CURIAM:

Defendant was convicted after a jury trial of the sale of a Schedule II controlled substance. Sections 195.017 and 195.020, RSMo 1975 Supp. He was sentenced to 30 years imprisonment.

The state's case is based primarily on the testimony of Bill Miller, an undercover narcotics agent for the Springfield Region II Narcotics Bureau. Miller testified that he was working with Randy Shimkus and Shimkus suggested they go to defendant's home in Springfield. They were invited into defendant's home by defendant's wife. Shimkus asked defendant if he had any liquid demerol. Defendant said he didn't any more and asked Shimkus if he was interested in demerol tablets. Defendant said it would take about ten minutes to get the tablets and they cost $10 each. Miller and Shimkus asked to buy two tablets apiece. Defendant told his wife to go get some demerol and Miller attempted to give defendant $40 for two tablets for him and two for Shimkus, but defendant told him to give it to Shimkus. Miller did so and Shimkus then gave the money to defendant, but defendant handed it back and said he didn't want anything to do with the money and told Shimkus to give it to defendant's wife. Defendant gave his wife some money and said he wanted two tablets also. She left and returned in about 10 or 15 minutes with a small aspirin container which she handed to defendant. Defendant removed two tablets and slid the container to Miller. Miller saw four tablets in the container, picked it up and put it in his shirt pocket. Miller and Shimkus left shortly afterwards. Miller dropped Shimkus off, returned to his residence, and sealed the aspirin tin in an evidence envelope. He locked it in his briefcase and placed the briefcase in the trunk of his car. The next morning he took the tablets to the region office and turned them over to another agent, who then delivered the tablets to the Region II Crime Laboratory. Don Smith, director of the laboratory, examined the tablets and testified that they contained pethidine which is synonymous with demerol.

Defendant testified that Miller and Shimkus came to his home and Shimkus asked him if he had anything to get loaded on. Defendant said he replied that he didn't have anything. Shimkus then asked defendant about some demerol and defendant told him that his wife knew where she could get some. Defendant said Shimkus offered him money but he refused, saying he didn't want anything to do with it, and Shimkus then gave the money to defendant's wife. Defendant also had his wife purchase two tablets for him. When she returned, defendant took his two out of the tin, and Shimkus picked it up and handed it to Miller.

Randy Shimkus was called as a witness by defendant and stated that he had been working with narcotic agents since late 1974 or early 1975 and had received different amounts of expense money for this during that time. He said it was Agent Miller's idea to go to defendant's house but that he was the one that brought up the subject of demerol. He said that Miller gave the money for the tablets to defendant and that defendant then gave it to his wife. She returned with two tablets which she gave to defendant who gave them to Miller. Other evidence will be mentioned in discussing the points raised by defendant.

Defendant raises twenty-one points in his brief numbered I through XX, including one numbered VII–A. We consider them as they were numbered.

I

Defendant contends that the trial court should have dismissed the state's amended information, based upon § 556.280, RSMo 1969, because that statute is unconstitutional as it gives the prosecuting attorney discretion in charging a defendant under that statute and subjected this defend-

ant to cruel and unusual punishment in violation of Article VIII of the Amendments to the United States Constitution and Article I, Section 21 of the Missouri Constitution. The amended information under the "second offender act" charged that defendant had been convicted of a prior felony and the punishment here was set by the court. Defendant's only case authority cited is *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), reh. den. 409 U.S. 902, 93 S.Ct. 89, 34 L.Ed.2d 163 (1972). That decision dealt with the death penalty and has no application to the present situation.

In discussing § 556.280, the Missouri Supreme Court, in *State v. Maxwell*, 411 S.W.2d 237, 240 (Mo.1967), stated:

"The statute and the procedure are valid for all purposes and against all such constitutional attacks. Such a point should be denied peremptorily in future cases."

Granting of discretion to the prosecuting attorney to file under this act has been upheld. *Wilwording v. State*, 438 S.W.2d 447, 449 (Mo.1969). The fact that a judge rather than a jury sets the punishment does not establish that it would then be "cruel and unusual." Point I is denied.

## II

■ Defendant contends that the amended information should be dismissed because it charged the defendant under the second offender act with a conviction thirteen years old. He claims that using a conviction so remote in time violates equal protection of the law under the Fourteenth Amendment to the United States Constitution. The second offender act has been held not to violate equal protection of the law. *State v. Maxwell*, supra, 411 S.W.2d at 239. This act places no time limitation within which the previous conviction shall have occurred. *State v. Phillips*, 511 S.W.2d 841, 843 (Mo.1974). In *Phillips*, the use of this statute was held proper where the prior conviction occurred twenty-six years previously. Point II is denied.

## III

■ Defendant contends that the trial court should have remanded the case for a "further preliminary hearing" because he was denied effective assistance of counsel at his preliminary and because he was "bound over on unreliable evidence". This point does not say in what manner his counsel was ineffective and does not appear sufficient to preserve anything for review. *Riley v. State*, 545 S.W.2d 711, 712 (Mo.App. 1976). However, there is nothing in the record to indicate that counsel was ineffective. There is also nothing in the record to indicate that defendant was bound over for trial on unreliable evidence. Moreover, it would not be up to us to judge the reliability of the evidence. A preliminary examination is not a trial and does not adjudicate the guilt or innocence of the accused. *State v. Clark*, 546 S.W.2d 455, 462 (Mo.App.1976). The magistrate is the sole judge of the sufficiency of the evidence and in the absence of fraud or arbitrary conduct, that determination is not subject to review. Id. No fraud or arbitrary conduct is shown. Point III is denied.

## IV

■ The defendant contends that the court erred in allowing the opinion testimony of Don Smith because Smith did not qualify as an expert in chemical analysis. Mr. Smith testified that his examination of certain tablets established that they were pethidine. He was the director of the Region II Crime Laboratory in Springfield, Missouri. He had a bachelor of science degree in cereal chemistry from Kansas State University and had previously been a quality control manager for three years and a laboratory supervisor for six years at a foods company in Springfield. He has attended several seminars and in some of the seminars performed testing of substances. He had made numerous tests and chemical analysis in his five years with the crime laboratory. The qualification of an expert is for the trial court's determination in the exercise of sound discretion. *State v. Jones*, 518 S.W.2d 304, 311 (Mo.App.1975).

We find no abuse of discretion in allowing Mr. Smith to testify. He appeared to have ample qualifications both by education and experience. This point is denied.

## V

Defendant next contends that because the evidence indicated that the former chief chemist of the Region II Crime Laboratory had examined the tablets and did not testify, that there was a break in the chain of custody of them. Don Smith, the director of the laboratory, testified that a report attached to the envelope in which the tablets were kept indicated an examination of them by that chemist. The purpose of the custody and possession rule is for assurance that the exhibit has not been altered or tampered with and that there has been no substitution. *State v. Lemon*, 504 S.W.2d 676, 684 (Mo.App.1973). The state is not required to exclude every possibility of these occurrences and evidence which provides a reasonable assurance that the exhibit is the same and in the same condition meets this test. *Id.* It is not required that the state produce a witness who has continually kept a watch on the exhibit or retained it in his personal possession *State v. Gardner*, 534 S.W.2d 284, 291 (Mo.App. 1976). The exhibit was in the custody of authorized laboratory personnel and we do not believe that prevents a reasonable assurance that the exhibit is the same and in the same condition. Procedures for keeping and transferring the exhibit indicate an orderly and regular procedure of custody, possession and control. See *State v. Gardner*, supra, 534 S.W.2d at 290. The state does not have to negate every possibility of tampering with the exhibit. *State v. Burnett*, 538 S.W.2d 950, 952 (Mo.App.1976). We believe that the chain of custody here was sufficiently established. Point V is denied.

## VI

Defendant contends that the state's case failed to show that pethidine was a controlled substance and the trial court thus erred in overruling his motion for judgment of acquittal at the close of the state's evidence. This claim of error was waived when defendant thereafter introduced evidence. *Achter v. State*, 545 S.W.2d 86, 87 (Mo.App.1976). In addition, it was not necessary for the state to introduce evidence that pethidine was a controlled substance. Section 195.017.4(2)(n), RSMo 1975 Supp., lists pethidine in the schedules of controlled substances. Missouri courts take judicial notice of public statutes enacted by the Missouri legislature. *Bly v. Skaggs Drug Centers, Inc.*, 562 S.W.2d 723, 726 (Mo.App.1978). Also see *State v. Harris*, 564 S.W.2d 561, 568 (Mo. App.1978). Point VI is denied.

## VII

Defendant claims that the court erred in rejecting his offers of proof, which attempted to impeach Randall Shimkus by showing his reputation and his bias and prejudice toward defendant, and erred in failing to declare Shimkus a hostile witness. Shimkus was with the undercover agent and had suggested that they go see the defendant. Shimkus was not called as a witness by the state but was called by defendant. Defendant had earlier taken his deposition. There was no showing of any surprise in his testimony or that his testimony had changed since the deposition. Defendant wanted to show that Shimkus was a drug dealer and that Shimkus had earlier tried to induce defendant to sell drugs and to show that Shimkus had a bad reputation.

As a general rule, a party is not permitted to impeach his own witness unless surprised by the testimony and the witness then, in effect, becomes a witness for the adverse side. *State v. Cox*, 542 S.W.2d 40, 48 (Mo.App.1976). There was no showing of any change from the testimony that was expected. Upon inquiry by the trial court as to surprise or change in Shimkus' testimony, defendant's counsel stated that at that time there was none. Defense counsel never later claimed any surprise or inconsistency in the testimony. No basis to impeach Shimkus or to have him declared hostile was shown. A party is not allowed

to treat his witness as hostile unless that party is surprised by the answers and those answers, in effect, make the witness a witness for the other side. *State v. Woolford*, 545 S.W.2d 367, 373 (Mo.App.1976). The extent to which an unfriendly or hostile witness may be examined is a matter within the sound discretion of the trial court. *Conner v. Neiswender*, 360 Mo. 1074, 232 S.W.2d 469, 473 (1950). Where the witness testified as expected, we cannot say that the court abused its discretion in not allowing cross-examination and impeachment. Point VII is denied.

### VII–A

■ Defendant contends that the court erred in admitting into evidence state's exhibit 4. This was a copy of a judgment and sentence of defendant on November 5, 1963, for burglary and grand stealing, certified as a "full, true and complete copy" by the Clerk of the Circuit Court of Greene County, Missouri. Defendant contends that this document is hearsay and was not properly authenticated. No reason is given as to why the authentication was not proper. The document shows that defendant was previously convicted and sentenced in the Circuit Court of Greene County, Missouri. "Copies from the record of proceedings of any court of record of this state, attested by the clerk thereof, with the seal of the court annexed, . . . shall be received as evidence of the acts or proceedings of such court of record in any court of this state." § 490.130, RSMo 1969. The clerk attested to the judgment's correctness and the seal of the court was affixed. Point VII–A is denied.

### VIII

■ Defendant contends that the court should have declared a mistrial as the circuit clerk was guilty of misconduct in drinking intoxicating beverages in the courtroom during the trial and that this detracted from the decorum of the trial and was disruptive. On the second day of the trial, the defendant moved for a mistrial, claiming that during the evening hours of the

preceding day, while the jury was present, the clerk was carrying and drinking from a glass containing scotch and water. No disruptive effect was shown nor was there any showing of intoxicated conduct. The declaration of a mistrial is a drastic remedy and lies within the sound discretion of the trial judge. *State v. Boykins*, 541 S.W.2d 90, 91 (Mo.App.1976). The drinking of intoxicants was not conclusively established and even if it had occurred, no prejudice was shown. We cannot say that the trial court's denying a mistrial was an abuse of discretion. Point VIII is denied.

### IX

Defendant contends that the trial court should have granted a continuance to allow defendant to obtain the presence of certain witnesses and that the court was in error in sustaining the state's motion to prohibit the testimony of these witnesses. The purpose of the testimony of the witnesses was to impeach Mr. Shimkus. The court determined that this testimony was not admissible. As we stated in discussing point VII, there was no error in refusing to allow defendant to impeach his own witness. The statements of defendant and his defense counsel as to what the witnesses' testimony would be showed that their testimony would have been inadmissible. Therefore, no prejudice for their nonattendance is shown. Point IX is denied.

### X

■ Defendant contends that the court erroneously refused to give his tendered Instruction No. 15 as the evidence had shown "that defendant, at most, was acting as a procuring agent" and there was no showing that he had "engaged in the sale or had associated with the seller or profited from the transaction". This instruction stated:

### "INSTRUCTION NO. 15

If you find and believe from the evidence that the narcotic's agent asked the defendant to get some Demerol for him

and thereupon the defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller and cannot be convicted of selling."

The trial court correctly refused to give this instruction as it was an incorrect statement of the law. If the jury found the facts stated in the instruction that would not have required them to find defendant not guilty of selling demerol. They still could have found him guilty of sale as an "aider or abettor". "Evidence sufficient to justify the jury in finding that the defendant did in any way aid, abet, or encourage another in the commission of an offense is sufficient to support a conviction." *State v. Gamache*, 519 S.W.2d 34, 39–40 (Mo.App. 1975). Even if defendant did not actually make a sale himself, the jury could have found that he aided it. The information was not required to specifically charge defendant as an aider or abettor, *State v. Lemon*, supra, 504 S.W.2d at 683, and the jury was instructed on defendant's aid by the giving of Instruction Number 5, MAI–CR 2.10. In *State v. Tierney*, 584 S.W.2d 618, 625 (Mo.App.1979), the defendant was the "connection" between the buyer and seller. The court affirmed the conviction; stating that one who aids and abets the commission of a crime is guilty as a principal. Id. Point X is denied.

### XI

Defendant contends that the court erred in overruling defendant's motion for judgment of acquittal at the close of the state's case, and at the close of all the evidence, for the reason that there was insufficient evidence on which to base a conviction. As this point does not state in what manner the state's evidence was insufficient, it does not preserve anything for our review. *State v. Gardner*, supra, 534 S.W.2d at 290. Nevertheless, we observe that what we state in considering points X and XII shows that there was sufficient

evidence from which the jury could find defendant guilty beyond a reasonable doubt.

### XII

Defendant contends that the court erred in giving Instructions No. 5 and 6 because they "improperly hypothesized the facts and were not supported by the evidence in that there was no showing that Robin Gardner had sold a drug or that defendant participated in the sale." Instruction No. 5 followed MAI–CR 2.10 and Instruction No. 6 was MAI–CR 14.10. They stated:

### "INSTRUCTION NO. 5

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence."

### "INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 28, 1975, in the County of Greene, State of Missouri, the defendant and Robin Gardner sold a drug known as pethidine, and

Second, that defendant was not unlawfully entrapped into so doing, as submitted in Instruction No. 7, and

Third, that defendant was aware of the character of the drug and intentionally and knowingly sold it,

Fourth, that the defendant acted either alone or knowingly and with common purpose together with Robin Gardner in the conduct referred to in the above paragraphs, then you will find the defendant

guilty of the sale of a controlled substance.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."

Defendant contends that the instruction assumes that Robin Gardner sold the drugs and that there was no evidence of a sale from her or the defendant as neither "set up the sale or profited therefrom". The instruction did not assume that Robin Gardner sold the drug as it requires the jury to find the facts stated. The judge also correctly advised the jury that the court "does not mean to assume as true any fact referred to in these instructions but leaves it to you to determine what the facts are." MAI–CR 2.03.

As stated in our discussion of point X, the jury could have found defendant guilty as a principal, even if he was not the seller, if he aided or encouraged the offense. The same would be true of Robin Gardner. It is not necessary that they either directly make the sale or profit from it. The evidence would support a finding that both defendant and Robin Gardner "aided and abetted" an illegal sale. This point is denied.

### XIII

■ Point XIII contends that the court erred in the order that the instructions were given because defendant's converse was not given directly after the verdict director. In the argument portion of the brief, defendant claims that he was entitled to have the converse given immediately after the "entrapment" instruction. As authority he cites MAI–CR 3.02. Nothing there or in the notes on use say where the converse should be given. Instructions may be given "in such order as the court shall determine unless otherwise instructed in approved Notes on Use." Rule 20.02(f), V.A.M.R. Defendant contends that this order caused his converse instruction to be deemphasized. We do not believe that this is supported by the record. The court instructed the jury that they "must not single out certain instructions and disregard others . . . ." MAI–CR 2.03. Point XIII is denied.

### XIV

■ Defendant next contends that the court erred in not declaring a mistrial when the prosecuting attorney in closing argument referred to defendant as a "previously criminally-inclined, methodical and calculating drug seller". The trial court denied defendant's motion for a mistrial but sustained the objection and instructed the jury to disregard these comments. This argument was made in response to defendant's claimed defense of entrapment and was referring specifically to paragraph 2 of the entrapment instruction. MAI–CR 3.28. The prosecutor contended defendant was ready and willing to engage in the prohibited sale and that the officer only provided him with the opportunity. Whether remarks of counsel are so prejudicial as to necessitate a discharge of the jury is a matter within the trial court's discretion and an appellate court will not interfere unless the record shows an abuse of such discretion. *State v. Wintjen*, 500 S.W.2d 39, 42 (Mo.App.1973). The remarks were not so far removed from the evidence and the issues at trial as to deny defendant a fair trial. The denial of a mistrial was not an abuse of the court's discretion. Point XIV is denied.

### XV

■ Defendant contends that the court erred in giving an instruction submitting the offense of possession of pethidine because it was given after defendant had made his closing argument and its timing "prejudiced the defendant's closing argument and it was confusing to the jury". After the regular closing argument, the court asked the jury to "be at ease for a few minutes" in the jury box and then outside their hearing told counsel he was going to give an instruction submitting the offense of possession of pethidine. After defendant's objection he gave the instruction and then asked defendant's counsel if

he wished additional time to argue. He did and was allowed to argue further. Defendant contends that he was prejudiced because in his original closing argument his counsel "all but admitted that defendant was guilty of possession" and was put in the position of having to "recant" part of this closing argument. The record shows that in this latter argument counsel did not retract or disavow any of his previous argument. Giving this additional instruction could not then have been prejudicial for that reason.

It is not improper for a trial judge to give additional instructions after argument. *State v. Hudson*, 521 S.W.2d 43, 48 (Mo. App.1975). Even after deliberations have started, it is within the province of the court to recall the jury and give them further instructions when in the exercise of a proper discretion the trial court regards it as necessary to do so in the furtherance of justice. *State v. Amos*, 553 S.W.2d 700, 702 (Mo. banc 1977). We cannot say that such discretion was abused here, particularly where defendant was found guilty of the greater offense. If there is error in the giving of an instruction on a lesser included offense, it is cured by a verdict finding the defendant guilty of the greater. *State v. Madison*, 557 S.W.2d 8 (Mo.App.1977). Point XV is denied.

### XVI

Defendant next contends that the court erred in giving the instruction on possession of pethidine because it is not a lesser included offense of sale and that the giving of this instruction emphasized the court's feeling that defendant was guilty. We need not determine if possession was a lesser included offense of this sale. As stated in discussing the previous point, any error in giving this instruction was cured by the verdict finding defendant guilty of a sale. Nothing is shown in the record to support the contention that the judge felt that defendant was guilty. There is no showing that the trial judge had any improper feelings toward the defendant or that the judge felt he was guilty. Point XVI is denied.

### XVII

Defendant contends that the trial court erred in not giving him an opportunity to offer a converse instruction to the possession instruction to be read immediately following it. After the court read the possession instruction, and the jury retired to deliberate, the judge asked whether defendant wanted to give a converse to that instruction. Defendant's counsel announced that he did. After the jury had been out 21 minutes, the court sent them to lunch and when they returned, defendant's converse was given. They then resumed their deliberation. No request for a converse was made until the court's inquiry. The trial court is not required to submit such an instruction, unless requested. Rule 20.02(a), V.A.M.R.; MAI–CR 3.02, Notes on Use, 1; *State v. Smith*, 515 S.W.2d 761 (Mo.App.1974). We do not see how the trial judge can be guilty of error when a converse was not earlier requested. The trial judge called to counsel's attention that a converse could be given and defendant wanted to give the instruction. The delay in giving it was due to defendant's failure to timely request such an instruction. If there was any confusion or prejudice regarding the converse, it was created by defendant. This point is denied.

### XVIII

Defendant next contends that the court's giving of MAI–CR 1.10 amounted to coercion. After the jury had been deliberating approximately four hours, the court asked whether they felt that further deliberation "would be fruitful?" The foreman replied that he didn't think so. The judge then requested to be told how they were divided without telling him "how anyone stands". The foreman replied that it was eleven to one. No statement was made as to whether this was for conviction or acquittal. The judge then gave MAI–CR 1.10. Its notes on use provide: "1. 'MAI–CR No. 1.10 may be given, when appropriate, after extended deliberation by the jury.' Rule 20.02(a)." Being told by a jur-

or that he believed further deliberation would be useless does not preclude a judge's use of this instruction. *State v. Hawkins*, 581 S.W.2d 102, 104 (Mo.App.1979).

■ Defendant relies on *State v. Sanders*, 552 S.W.2d 39 (Mo.App.1977). There the jury announced that it stood nine to three for conviction. Ten minutes after MAI–CR 1.10 was given, it returned a guilty verdict. The record here does not show how long after the instruction was read that the verdict was rendered. In *State v. Smith*, 556 S.W.2d 484 (Mo.App. 1977), after 3½ hours of deliberation, the court was told that the jury was divided ten to two. The judge gave this instruction and fifty minutes later the jury returned a guilty verdict. The opinions in *Sanders* and *Smith* were written by the same judge. In *Sanders* its situation was distinguished from *Smith* thusly: "The distinguishing factor there was that before giving the instruction the jury had announced it stood *nine to three for conviction* and just ten minutes later returned a guilty verdict. We held those circumstances indicated coercion warranting reversal. The cited facts here are readily distinguishable." The instruction was held not to be error. 556 S.W.2d at 485. Giving this instruction after two hours and forty minutes of deliberation, when the jury stood eleven to one, was held not to be an abuse of discretion in *State v. Jones*, 558 S.W.2d 242, 246 (Mo. App.1977), cert. den. 435 U.S. 970, 98 S.Ct. 1609, 56 L.Ed.2d 61 (1978). Also see *State v. Hawkins*, supra, 581 S.W.2d at 104. We cannot say here that the giving of the instruction was coercive. Point XVIII is denied.

### XIX

■ Defendant contends that the court erred in denying his motion for a mistrial based on the court's response to a juror's question as the response "was improper and in effect directed a verdict against the defendant". After MAI–CR 1.10 was given a juror requested permission to ask a question. The judge advised him to write it out. The question was: "In your Instruction Number 5, does this mean the buyer becomes as guilty as the seller because of aid?"

The judge replied:

"THE COURT: With regard to the question you have submitted, I would suggest that you read Instruction 5 in conjunction with Instruction 6. I think Instruction 5 is given to aid particularly in the interpretation and the reading of Instruction Number 6 and that is about all I can tell you about that problem, and with that I will deliver you back to the Bailiff who will escort you into your jury room."

Instruction 5 was MAI–CR 2.10 and instruction 6 MAI–CR 14.10. It appears to us that the comments were substantially correct and would not have prejudiced defendant. The question related to the application of Instruction Number 5 to a sale. Sale was covered in Instruction 6. Not every communication between the court and jury is an instruction within the rule requiring that instructions be in writing. Mere reference by the judge to the instructions previously given is not an instruction required to be in writing. *State v. Baugh*, 382 S.W.2d 608, 612 (Mo.1964). Common courtesy required the court to make some answer. *State v. Duisen*, 428 S.W.2d 169, 177 (Mo. banc 1967), cert. den. 390 U.S. 962, 8 S.Ct. 1063, 19 L.Ed.2d 1159 (1968). Point XIX is denied.

### XX

Defendant contends that he is entitled to a new trial because the conduct of the trial judge denied him a fair and impartial trial. Defendant claims that the judge's conduct showed bias in favor of the state and prejudiced the minds of the jury against him. In the argument under this point defendant rehashes many of the previous points and contends that the court's rulings showed prejudice against him. As we have considered those points and find no prejudicial error in the rulings, this argument necessarily fails.

Some of the comments of the judge complained about, occurred outside the presence of the jury, and how that could have prejudiced them against defendant is not shown. We have carefully examined the record before us and believe that the trial judge showed commendable patience in light of defendant's repeated attempts to present inadmissible evidence.

█ Defendant also contends that the 30 year sentence showed bias and prejudice. It was within the range of authorized punishment. § 195.200.1(5), RSMo 1969. A claim of bias and prejudice based only on the length of the sentence is not shown where the sentence is within the statutory limits. *State v. Booker*, 517 S.W.2d 937, 942 (Mo.App.1974). The record does not support defendant's contentions on this point. The point is denied.

The judgment is affirmed.

BILLINGS, P. J., HOGAN, J., and FRANK CONLEY, WILLIAM L. RAGLAND and JOHN M. YEAMAN, Special Judges, all concur.