**STATE of Missouri, Respondent,**

v.

**William Henry SOCKEL, Jr., Appellant.**

**No. KCD 26061.**

Missouri Court of Appeals,
Kansas City District.

Jan. 19, 1973.

S. Richard Beitling, William S. Ferguson, Jr., Kansas City, for appellant.

John C. Danforth, Atty. Gen., Vincent F. Igoe, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, C. J., and DIXON and CROSS, JJ.

DIXON, Judge.

William Henry Sockel, Jr., was convicted by a jury of the offense of possession of stimulant drugs in violation of Section 195.240 RSMo 1969, V.A.M.S. (all statutory references will be to RSMo 1969 unless otherwise noted). He was sentenced by the court, under Section 556.280 pursuant to a finding of prior felony conviction, to a term of nine years.

On June 17, 1970, in the early morning hours, the Kansas City Police responded to a cab driver's request for assistance with a sick passenger. Two officers responded to the call and, upon arriving at the location of the cab, found the defendant in an unconscious state in the rear seat of the cab. The police noted the presence of a hypodermic needle and vials on the rear seat of the cab. These were in plain view of the police from outside the cab and even more obvious when they entered the cab to render assistance to the unconscious defendant. This assistance consisted of administering ammonia capsules which sufficiently aroused the defendant to permit his removal from the cab with the assistance of the officers. There were five bottles or vials on the rear seat with the syringe, and four contained pills or tablets, and one contained a greenish yellow liquid. Defendant had a small puncture wound on his right forearm and a substance that "looked like blood" was on both defendant's arm and the needle of the syringe. Defendant was vomiting after his removal from the cab, but was able to remain erect and walk. He was placed under arrest and in one of the two police vehicles at the scene. The cab driver called the attention of the officers to some other items of personal property placed in the trunk of the cab by the defendant. These were removed by the officers and placed in the police cars. Among these items were packages and bottles of pills, hypodermic syringes, two license plates, tires, radios, typewriter, tape recorder, suitcase and other items. The items last mentioned had been placed in the trunk of the cab when the defendant, upon the initiation of his trip, directed the cab driver to a disabled vehicle from which the defendant removed the articles.

What has been related thus far is a composite of the testimony of the cab driver and the two police officers.

Because of its importance in the disposition of this appeal, the disposition and movement of the items removed from the cab will be related in detail so far as the record here supplies such detail. The disposition of the items from the rear seat and the trunk at the scene is not clear except that all the items were placed in one of the police vehicles. From the scene, the record shows they were taken to "the property room." At 7:00 a. m., the arresting officers arranged the items in a group and took photographs. Both the items from the rear seat and from the trunk were included in the photographs. The property was all inventoried, listed on property slips and placed in the property room. The property slips were not identified or related to the items in any way on the record. The inventory made was not in evidence, and any relationship between the inventory and the property list is not shown. Nothing appears concerning the property items' care and custody while in the "property room" except that "they were under lock." One of the officers testified he had made no marks on the bottles to identify them. The other officer said he marked some of the bottles but not the one with the yellow liquid; he "believed" the other officer did initial that particular bottle.

The State then presented evidence from a third police officer who had no part in the initial investigation. This officer said he took certain property to the police laboratory. He did not know what the property was, but was listed on property slips B08500, B08A01 and B08A02. No testimony appears even suggestive of a connection of this property with the defendant. Delivery of the items to the laboratory was acknowledged by the lab technician who identified the receipt by the numbers shown. The witness recited at length his findings upon analysis. *Three* of the several vials and bottles were found to contain the prohibited substance in *liquid* form.

Several other vials and bottles contained other prohibited substances in tablet form. The lab man then stated that he renumbered the sacks received, sealed them and placed them in the "property room." The State then inquired as to the present location of the samples which had been analyzed. The startling response was that they had been destroyed. The State, over the vehement protest of the defense, then elicited testimony that because of storage limitations, the standard police practice was to destroy all such material once a year.

■ Scrutiny of this record discloses not one iota of evidence, documentary, oral or otherwise, to connect the findings of the laboratory with the items found in the cab with the defendant on the night of the arrest. Upon proper objection, the evidence of the lab technician should have been excluded. Absent such evidence, this conviction could not stand.

The difficulty arises because no complaint or objection on this ground was made by the defense at trial. To understand and perhaps excuse neglect on counsel's part in failing to object, it is necessary to advert to the photographs taken at the station house the morning of defendant's arrest. There were two of these photographs in evidence. The first was marked Exhibit 1 and when it inexplicably disappeared after the first day of trial, the defense stipulated that another photograph of the same scene could be substituted. The record does not disclose any remarked or additional marking of the photograph finally used. No exhibits have been filed here, but the index to the transcript refers to the second photograph as "State's Exhibit 2" and, presumably, the State has possession of the finally marked exhibit.

The originally marked photograph was identified early in the testimony of the first of the arresting officers. When it was first offered, the officer had verbally described the items found in the cab with the defendant. The officer was then asked

if he could recognize "any of those items or a reproduction thereof" to which he responded affirmatively. The State then requested that two photographs be marked as State's Exhibits 1 and 2. The defense objected on the grounds that the pictures were inflammatory in showing other offenses, that the items in the picture had not been marked or initialed in any way and were commonly available bottles. The State then made an offer to prove that the officer testifying had laid the articles out for the photograph and was present when the picture was taken. The objection of the defense was then overruled and the defense then made a further objection that there was "no showing that the chain of evidence had remained intact." The court then said that he was not sure what the chain of evidence would be "but based on the present state of the record," the objection would be overruled. The State had known for at least three days that all physical evidence in the case had been destroyed. The State on the day of trial had furnished the defense with a list of the property taken from the defendant without, as far as the record shows, any intimation that the property was no longer in existence. *After* the officer had identified a bottle in the photograph as one removed from the cab, the defense made another unavailing attempt to exclude the photograph before it was passed to the jury. On this objection the defense asserted the photograph was not the "best evidence. The items themselves are." Even then, the State did not disclose that these items could not be placed in evidence.

■ In the light of these events, it is perhaps not surprising that defense counsel did not object for lack of a foundation when the laboratory technician, buttressed with specific property numbers, described in exact detail a bottle *like* the one shown in the photograph and asserted its contents were a substance proscribed by the statute. Certainly good trial practice dictated a motion to strike that testimony when the witness testified the physical evidence had

been destroyed. Such failure to so move does not in all circumstances preclude review. State v. Williams, 416 S.W.2d 71 (Mo.Sup.1967).

Defendant has briefed the point on the assumption that the "best evidence" rule applies to the photograph and that it was prejudicial error to admit the photograph. The defendant's motion for acquittal did raise the question of insufficiency of the evidence, but did not specifically refer to the lack of foundation for the testimony of the laboratory technician. The assignment raises the issue of the sufficiency of the evidence to sustain the conviction. State v. Mallory, 336 S.W.2d 383 (Mo.Sup.1960).

■ *Sua sponte* application of Rule 27.20(c), V.A.M.R., should be exercised sparingly. Nonetheless, the record here justifies application of that rule to reverse the conviction of this defendant. When the evidence erroneously admitted is the only evidence which supports the verdict, then the plain error rule will be applied because, without the erroneously admitted evidence, there is no competent evidence to sustain the conviction. State v. Williams, supra, l. c. 74, where the court said:

"Although defendant did not move for a judgment of acquittal pursuant to Criminal Rule 26.10, V.A.M.R., and did not specifically assign in his motion for new trial the insufficiency of the evidence to sustain the conviction, the imprisonment of an accused for the commission of a crime not sustained by competent evidence as a matter of law constitutes plain error affecting substantial rights within the meaning of Criminal Rule 27.20(c), V.A.M.R."

■ The instant case, like Williams, is one where the erroneous admission of evidence is not cumulative to other evidence which would support the conviction. Cf. State v. Martin, 433 S.W.2d 565 (Mo.Sup. 1968), l. c. 567; State v. Patterson, 443 S.W.2d 104 (Mo.Sup. En Banc 1969), l. c. 108.

Another factor requiring the application of Rule 27.20(c) is the State's failure to disclose the situation concerning the availability of the physical evidence. This record does not reveal a situation where the defense knowingly speculated on the absence of the physical evidence as a trial tactic. In such a case, the reasons impelling a *sua sponte* exercise of discretion under Rule 27.20(c) would not appear.

To be determined is the disposition of the cause. Defendant has asserted that the State, by its voluntary action has "destroyed" his defense. This argument is predicated on testimony of a female witness who averred that she had accompanied the defendant from a tavern to a doctor's office a few days prior to June 17, 1970. She claimed to have been in the waiting room of the doctor and saw the defendant emerge from the doctor's office with a small bottle containing *pills*. Defendant seems to assert that no evidence other than the container seized from him will sustain his position that he was lawfully in possession of the drugs. To say that this strains credulity is charitable. If the witness is to be believed, she *took* the defendant to the doctor's office; and surely she can retrace that trip and enable the defendant to produce the record of that visit from the records of the physician. She claims defendant was intoxicated and perhaps that would have excused his inability to recall the name or location of the doctor as asserted by counsel in the oral argument, but there is no explanation for the inability of the witness to locate the physician. The State has not destroyed the only evidence of the defense nor is it even clear from the record that the vial taken from the defendant bore any markings suggestive of legitimate possession. There is no evidence that the destruction of the physical evidence was accomplished to avoid such a defense. This argument of defendant does not require outright reversal.

■ The State has not made the necessary proof to establish a foundation for the testimony of the expert as to the contents of the vial. That necessary proof may be available to the State and the cause will be remanded to afford an opportunity to establish the necessary chain of evidence connecting the defendant's possession and the ultimate fact of the nature of the substance.

Since the case may be retried, some comment on the other points raised by the defendant may resolve some of the issues raised on this appeal.

The major thrust of defendant's brief is on the supposed illegality of the seizure of the items from the cab. Defendant has cited many Federal cases dealing with constitutional issues of search and seizure and arrest. These need not be reviewed upon the basis of a claim of invasion of constitutional right since that has not been properly raised in the brief.

■ Some analysis of Missouri authority may focus the issues more clearly than presented here and enable the trial court to deal with the problem more readily. Defendant mistakenly asserts that the items from the rear seat were illegally seized because the arrest of the defendant was unlawful as without probable cause. Factually, this position is unsound. The officers had a right to be where they were when they observed the defendant's condition, and the vial, hypodermic needle and what was apparently blood on the puncture wound and the needle. To say officers responding to a call of this nature may not make necessary "intrusion", if such it be, to render assistance would be ridiculous. State v. Miller, 486 S.W.2d 435 (Mo.Sup. 1972), l. c. 436, squarely holds they may. Granting the propriety of this action, the subsequent arrest must be measured by not only on what the officers saw and observed in plain view, but the experience and knowledge of the officers on drug use and its effects on physical characteristics of the user. When so measured, the action of the officers in arresting the defendant was undoubtedly upon probable cause.

State v. Ward, 457 S.W.2d 701 (Mo.Sup. 1970). State v. Novak, 428 S.W.2d 585 (Mo.Sup.1968). From that moment of arrest, a contemporaneous search of the vehicle was legal and not constitutionally barred. State v. McCarthy, 452 S.W.2d 211 (Mo.Sup.1970), 1. c. 215. State v. Hohensee, 473 S.W.2d 379 (Mo.Sup.1971), 1. c. 381. United States v. Harflinger, 436 F.2d 928 (8 Cir., 1970), 1. c. 932–934.

Defendant also challenges both the application and constitutionality of Section 195.180. As to constitutional attack, the point is not preserved; as to application and construction of the statute, the question need not be considered, for a retrial may not pose the same problem.

The judgment of conviction is reversed and the cause remanded.

All concur.