STATE of Missouri, Respondent,

v.

William REPP, Appellant.

No. 62081.

Supreme Court of Missouri, En Banc.

Aug. 18, 1980.

Ronald E. Pedigo, Public Defender, Farmington, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

William Repp, with two prior convictions of issuing no account checks in violation of § 561.450, RSMo 1969, was charged as a second offender under § 556.280, RSMo 1969 with six counts of issuing no account checks. He was convicted by a jury on all six counts and the court fixed his punishment at five years' imprisonment on each count. Judgment was rendered accordingly with the sentences to run consecutively.

The court of appeals affirmed the judgment. This Court transferred the appeal to review whether it was plain error for the trial court to have admitted, without objection, certain hearsay evidence, and whether the punishment imposed is cruel and unusual. Affirmed.

Between March 25 and April 2, 1978, the six no account checks in issue were passed at the Town and Country Supermarket in Farmington, Missouri. The checks were placed in evidence and four employees of Town and Country identified defendant as the person who passed them. An employee of the bank upon which the checks were drawn established that they were drawn against an account that had been closed before they were passed. Town and Country's manager stated that value was given for the checks. August Nilges, a handwriting expert, gave his opinion that defendant's signature appeared on each of the checks.

Sufficiency of evidence to support conviction is not questioned and the foregoing demonstrates evidence from which a jury reasonably could find defendant guilty as charged.

During the testimony of Mr. Nilges, the State introduced the written report of William H. Storer, the expert whom defendant had commissioned on his own behalf. Mr. Storer was not called as a witness. Defendant made no objection to the admission of this report, which, in agreement with the opinion of the State's expert, was an opinion that defendant signed the checks. Through the remainder of trial, the State made a number of references to Mr. Storer's report.

■ In recognition of failure to preserve a charge of error, appellant charges plain error to the admission into evidence of the handwriting analysis report of Mr. Storer. In his effort to invoke the plain error rule, he argues that the report was hearsay and that with its author unavailable to him for

cross-examination, he was denied his right to confront such witness.

Rule 29.12(b) provides:

Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

In this case, Mr. Storer was defendant's expert. His report was evidence of defendant's signature on the six checks. That defendant signed the checks was otherwise proved by testimony of the supermarket employees and the State's handwriting expert. Mr. Storer's report was thus cumulative of a matter otherwise proved in the State's case. In these circumstances, had the report been excluded as hearsay, there would still be a sufficiency of evidence, particularly in proof of the agency of the defendant. Thus, this Court does not find, in the admission of Mr. Storer's report "manifest injustice or miscarriage of justice" necessary to relief under Rule 29.12(b). *Compare State v. Sockel*, 490 S.W.2d 336 (Mo.App.1973) where evidence erroneously admitted was the only evidence in support of the verdict, conviction was reversed under the plain error rule.

Again conceding failure to preserve his charge, appellant contends that the punishment imposed amounts to cruel and unusual punishment in violation of the 8th Amendment to the United States Constitution.

■ Appellant admits that the punishment as to each offense falls within the limits prescribed by the Legislature; and he does not contend that the statute setting out the limits of punishment is invalid.

Section 561.450, RSMo 1969 provides that upon conviction of issuing a no account check, a defendant shall "be punished by imprisonment by the department of corrections for a term not exceeding seven years * * *."

■ A punishment within statutory limits cannot as a matter of law be held cruel and unusual when the statute authorizing the punishment is not invalid, *State v. Grimm*, 461 S.W.2d 746, 754 (Mo.1971);

when punishment imposed is within the range prescribed by statute, it cannot be judged excessive by the appellate court, *State v. Crider*, 419 S.W.2d 13, 15 (Mo.1967); and where defendant is convicted of separate offenses and the sentences imposed are within statutory limits, consecutive effect of the sentences does not constitute cruel and unusual punishment, *State v. Neal*, 514 S.W.2d 544, 549 (Mo.1974). *See State v. Williams*, 603 S.W.2d 562 (Mo. banc 1980); *See also Rummell v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) holding that mandatory life sentences imposed under Texas recidivist statute following defendant's third felony conviction for obtaining $120.75 by false pretenses does not constitute cruel and unusual punishment.

Accordingly, the judgment is affirmed.

DONNELLY, RENDLEN, WELLIVER and MORGAN, JJ., concur.

BARDGETT, C. J., concurs in part and dissents in part in separate opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, Chief Justice, concurring in part and dissenting in part.

I concur in that portion of the opinion which affirms the judgment of conviction.

I dissent from that portion of the opinion which affirms the sentence in this case of five years imprisonment on each of six courts to run consecutively for a total of thirty years imprisonment for the offenses of issuing six no account checks. The range of punishment for the violation of § 561.450, RSMo 1969, is that on conviction the defendant "be punished by imprisonment by the department of corrections for a term not exceeding seven years or by confinement in the county jail for not more than one year or by a fine of not more than one thousand dollars or by both such confinement and fine." The jury found the defendant guilty of six counts of issuing no account checks. Because he was tried under the second-offender act, the judge assessed the punishment and sentenced the defendant.

A portion of the dissent written by Robert G. Dowd, P. J., of the Missouri Court of Appeals, Eastern District in this case addressed the sentencing issue, and much of which follows is taken from his dissent without use of quotation marks.

Serious doubts arise about the integrity of the sentence imposed by the trial court in its decision to require the defendant to serve all six five-year terms consecutively without any reference to the circumstances surrounding the making of the different checks. See *Woolsey v. United States*, 478 F.2d 139, 143–44 (8th Cir. 1973). Generally, imposition of a sentence which is within statutory limits is not subject to review except for a manifest abuse of discretion by the trial court. *United States v. Hetherington*, 279 F.2d 792, 796 (7th Cir. 1960). The trial court may exercise its broad discretion when sentencing within the statutory limits. However, this discretion may not be unbridled and still maintain the integrity necessary to the sentencing process. Cf. *McGee v. United States*, 465 F.2d 357, 358 (2d Cir. 1972). The court in *McGee* indicated that where the defendant is charged and sentenced on more than one count, the sentence imposed for each count must have "independent integrity". *Id.* at 358. In part, it is in the trial court's apparently automatic assessment of five years imprisonment for each count in the instant case, regardless of the circumstances peculiar to each count, that I believe there is a lack of independent integrity in the sentencing procedure. There is nothing in the record to indicate that the trial court did more than simply multiply the punishment it deemed appropriate for one offense by the number of counts against the defendant and then ordered them served consecutively. The result of the consecutive sentence order is a punishment imposed far in excess of that normally assessed for this type of nonviolent crime.[1]

Contained in the file that came to this Court from the Missouri Court of Appeals, Eastern District at the time the cause was transferred, is the State of Missouri Board of Probation and Parole Investigation Report (presentence investigation report) on the appellant. It reflects that appellant has a history of writing no account and insufficient funds checks primarily in the area where he lives, and, as noted in the principal opinion, had previously been convicted of writing no account checks and had been sentenced to two terms of four years each to run concurrently. The six checks upon which he was convicted in the instant case were all written to "Town and Country Supermarket" in Farmington, Missouri, between March 25, and April 2, 1978, totalling $360. If given the maximum of seven years on each charge and if made to run consecutively, the total maximum sentence would be forty-two years, which was the prosecutor's recommendation. The presentence investigation report recommended a total sentence of twenty-one or twenty-eight years. As noted supra, the court then proceeded to sentence the defendant to five years on each of the convictions and made the sentences consecutive so as to impose a total of thirty years in the penitentiary. The court stated that it took into consideration the fact that the crimes were nonviolent, but noted that merchants lose large sums of money due to no account or insufficient funds checks.

In Missouri multiple sentences are to be served concurrently with each other unless the sentencing court expressly orders them to be served consecutively or cumulatively. *Anthony v. Kaiser*, 350 Mo. 748, 169 S.W.2d 47, 49 (banc 1943). Whether or not the sentences are to be consecutive is essentially within the discretion of the trial court. However, in this case making the sentences consecutive means that the defendant is sentenced to thirty years in the penitentiary for writing six no account checks. The

---

1. Compare this defendant's sentence with those assessed in *State v. Thomas*, 438 S.W.2d 441, 447 (Mo.1969), where defendant with four prior felonies received a sentence of four years for attempting to obtain funds by "bogus" check, or *State v. Polakoff*, 237 S.W.2d 173, 176 (Mo. 1951), wherein defendant was given only seven years prison time in an "aggravated" case (having several prior convictions) for obtaining $200 by means of a "bogus" check.

legislature had established seven years as the maximum punishment for an offense of this type. Given this situation I regard the court's order making the six five-year terms consecutive as a gross abuse of discretion. In *State v. Johnson*, 549 S.W.2d 348, 352 (Mo.App.1977), it was stated, "[O]ur courts have repeatedly held that a punishment which is within the statutory limits for the offense, . . . is not cruel and unusual because of its duration unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." See also *State v. Mitchell*, 563 S.W.2d 18, 26 (Mo. banc 1978). In my opinion, the order making these sentences cumulative causes the totality of the sentence in this instance to be so disproportionate to the offenses committed that it shocks the moral sense of all reasonable men as to what is right and proper under the circumstances. It may well be that this appellant will again pass no account checks when he is released from the penitentiary, whether that occurs in three years, five years, or thirty years. That seems to be the way it is with people who write no account checks. Be that as it may, thirty years in a penitentiary is, in my opinion, so grossly disproportionate to the offenses of which this appellant was convicted that the order making them consecutive is a substantial abuse of discretion. In my opinion this Court should vacate the order of the trial court directing that these terms be served consecutively. This would allow the terms to be served concurrently.

For the above reasons I dissent from that portion of the opinion which affirms the consecutive sentencing order in this case.

SEILER, Judge, dissenting.

I respectfully dissent. I believe that it was plain error to admit into evidence appellant's handwriting expert's report. However, if this conviction is to be affirmed, I concur in the dissenting opinion of the Chief Justice insofar as it would vacate the order of the trial court which directs that the sentences be served consecutively.

With respect to the plain error aspect of the case, much of what follows is from Judge Dowd's dissent in the court of appeals where he, too, would uphold the claim of plain error. Appellant's handwriting expert's report stated that appellant had signed the checks involved. The expert was not called to testify for appellant nor the state; consequently, appellant was denied his right as guaranteed by the sixth and fourteenth amendments to the United States Constitution to confront and cross-examine witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965); *State v. Hall*, 508 S.W.2d 200, 208 (Mo.App.1974).

Appellant's expert's report was clearly hearsay and, therefore, incompetent evidence of its contents. *State v. Hegwood*, 558 S.W.2d 378, 383 (Mo.App.1977). The state did not lay a proper foundation for the introduction of the report into evidence. The report was, therefore, improperly admitted into evidence. The state cannot argue that appellant's expert's report was cumulative and therefore harmless because the report and the state's expert's statement that appellant's expert was in agreement with him were admitted into evidence prior to the admission of the state's expert's opinion concerning appellant's signature. The jury undoubtedly assumed that the state's expert, as its witness, would testify that the examplars of appellant's handwriting matched the signature on the check but prior to that testimony being elicited the jury was already aware of the fact that the expert retained by appellant agreed with the state expert. The damage had been done *before* the state's expert expressed his opinion that the signatures matched. The appellant's expert's report was the first evidence received by the jury that appellant's handwriting exemplars matched his signature on the checks. It could not have been cumulative of any evidence previously introduced.

The state presented the following evidence: First, testimony of Winifred Corden, assistant treasurer of Pioneer Bank and Trust, who identified the state's exhibits

Nos. 4—9 as checks issued to an account which had been closed in 1976 and never reactivated. She could not say whether the checks in question were signed by appellant. Second, Thomas Buel, a forensic analyst for the highway patrol, testified that he had given appellant forms to sign to obtain a handwriting exemplar. He said that he did not, however, make any comparison of the exemplar with the checks. Third, August Nilges, also a forensic analysis for the highway patrol, testified. He said he did not receive any formal training in handwriting analysis but had received over the years on-the-job training at the highway patrol. Nilges was asked whether he knew of William H. Storer. He replied that Storer was a "very well-known, reputable handwriting expert." Then Nilges was given a copy of Storer's written opinion as to whether appellant wrote the checks in question and asked to look at it. He was asked if Storer's opinion was the same as his own, to which he replied affirmatively. Only after bolstering Nilges opinion and conclusions by establishing that the report of appellant's own "very well-known, reputable handwriting expert" arrived at the same conclusion, did the prosecutor have Nilges state his own opinion that appellant did sign the checks. Fourth, Terry Bowling, manager of the supermarket where all of the checks in question were cashed, testified. Then four cashiers who had actually cashed the checks testified. And finally, the state called Deborah Bowling, the store's bookkeeper, before resting its case.

In hindsight, it appears that the state had a solid case against appellant, but that may not have been the way it appeared while the trial was in progress. A closer inspection of the record indicates that the state had reason to feel uneasy about its case against appellant and felt compelled to emphasize the handwriting expert's report because it was so prejudicial to appellant and could not be subject to the scrutiny of cross-examination.

Appellant and the manager of the supermarket who authorized the cashing of appellant's checks were neighbors whose yards adjoined. Soon after the store opened appellant and the manager became friends; in the manager's words "we might have become, started friendship at that time. I considered myself to know him a little better than I did anyone else in town at that time." The manager authorized the cashing of two of appellant's checks even after the first of appellant's checks was returned to the store as a "no account" check. The manager testified that "When you first open a store to keep from making a bunch of enemies you have to be a little bit more liberal [in authorizing the cashing of checks]."

When appellant was contacted about the return of the first checks, he promised to come in and pay them off when all of the checks had been returned. When the supermarket bookkeeper (the manager's wife) called appellant, he returned her calls and said he was waiting for the last of the checks to be returned before paying them off. The bookkeeper said that she called the prosecutor's office and was told to file charges quickly and instructed to bring the checks in immediately. Even though store policy had been to give a person ten days to pay on a returned check and to assess a $2.00 charge on each returned check, the bookkeeper testified she may have, at the urging of the prosecutor's office, brought the checks to the prosecutor before appellant had the full ten days after he was called to make the checks good.

In short, the state's case had a strong suggestion that appellant *and the store manager*, his friend and neighbor, took the position that appellant was extended credit and would have to pay off the "no account" checks once all six checks had come back from the bank. The state's case also suffered the embarrassment of the manager knowingly cashing "no account" checks for his friend and then the store's bookkeeper, the manager's wife, ignoring store policy and rushing to press charges against appellant on the urging of the prosecutor's office even though appellant had talked to the store manager and bookkeeper to assure them that he would come in to pay off the checks.

Even if one were to assume, for the sake of argument, that appellant's expert's re-

port could have been considered cumulative of other previously admitted testimony, the devastating and prejudicial effect that such evidence, coming from an expert employed by the appellant, must have had on his cause in the minds of the jurors far outweighs the fact of possible redundancy. The record fails to demonstrate that appellant's legal rights were unaffected by the introduction of this report into evidence or that the jury could not have been adversely influenced thereby. *See State v. Crane*, 559 S.W.2d 294, 297–98 (Mo.App.1977).

The damage done to the appellant's cause by the introduction of this report into evidence and its exhibition to the jury, was then compounded by the state's repeated mention of the report throughout the course of the trial. It was stressed and emphasized to the jury five times in the prosecutor's final argument. The prosecutor's heavy reliance on this improper evidence is readily seen in just one example of these five statements in final argument:

> "Mr. Repp did *not like the results of that* test so he hired his own expert *and you've seen and you have read*, because I watched you, the results of his own expert who I tried to subpoena but he didn't get here. And of course Mr. Repp didn't have him here. But we know what his conclusion was. That Bill Repp did write these checks that were passed at Town and Country Supermarket."

When time came for their deliberation it is reasonable to assume that the jury retired with this incriminating report foremost on their minds.

I would reverse this case and remand for a new trial on the grounds that appellant has suffered a manifest injustice as a result of the improper admission into evidence of the expert's report without proper foundation and without affording appellant his right to confront and cross-examine the expert witness against him.